```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                          20 CR 160 (MKV)

 5   JORGE NAVARRO, et al.,

 6            Defendants.                 Telephone Conference

 7   ------------------------------x

 8                                        New York, N.Y.
                                          April 2, 2020
 9                                        2:30 p.m.

10   Before:

11
                     HON. MARY KAY VYSKOCIL,
12
                                          District Judge
13
                          APPEARANCES
14
     GEOFFREY S. BERMAN
15        United States Attorney for the
          Southern District of New York
16   BY:  ANDREW ADAMS
          SARAH MORTAZAVI
17        BENET KEARNEY
          Assistant United States Attorneys
18
     JASON W. KREISS
19        Attorney for Defendant Navarro

20   DEBORAH A. COLSON
          Attorney for Defendant Garcia
21
     ROBERT E. GOLDMAN
22        Attorney for Defendant Zulueta

23   DONALD T. ROLLOCK
          Attorney for Defendant Tannuzzo
24

25
```

                              APPEARANCES (cont'd)

CLAYMAN & ROSENBERG LLP
        Attorneys for Defendant Skelton
BY:   CHARLES E. CLAYMAN
        ISABELLE A. KIRSHNER

BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP
        Attorneys for Defendant Ross Cohen
BY:   BRUCE A. BARKET
        AIDA F. LEISENRING

ANDREW S. FELDMAN
        Attorney for Defendant S. Fishman

FASULO BRAVERMAN & DIMAGGIO, LLP
        Attorneys for Defendant Gianelli
BY:   LOUIS V. FASULO

PATRICK JOYCE
        Attorney for Defendant J. Fishman

CALVIN SCHOLAR
        Attorney for Defendant Dane

HARRIS BEACH PLLC
        Attorneys for Defendant Oakes
BY:   TERRANCE P. FLYNN
        DOREEN KLEIN

SEWARD & KISSEL LLP
        Attorneys for Defendant Servis
BY:   RITA M. GLAVIN
        MICHAEL G. CONSIDINE

STEPHEN P. SCARING
        Attorney for Defendant Rhein

COX & MAZZOLI PLLC
        Attorneys for Defendant Kegley
BY:   SCOTT C. COX

ROBERT M. BAUM
        Attorney for Defendant Chan

APPEARANCES (cont'd)


THE LAW OFFICES OF ONAODOWAN AND DELINCE, PLLC
     Attorneys for Defendant Argueta
BY:  ESERE J. ONAODOWAN

ANDREW MOLLICA
TIMOTHY M. DONOHUE
     Attorneys for Defendant Surick

DAVID WIKSTROM
     Attorney for Defendant Linke

GUY OKSENHENDLER
     Attorney for Defendant Marino

Also Present:
Melvin Roth
Erin Cunningham, U.S. Pretrial Services

1           THE COURT:  Good afternoon.  This is Judge Vyskocil.

2    Ms. Dempsey, would you please call the case:

3           Before you do, could I just ask people, please silence

4    your cell phones, don't be typing by your phone because we can

5    hear that over the line.  And please mute your lines if you are

6    not speaking.

7           Ms. Dempsey, would you call the case, please.

8           (Case called)

9           THE COURT:  I will ask Ms. Dempsey to call on the

10   parties in order for counsel to please state their appearance.

11   Otherwise, we are just going to have chaos if people just start

12   jumping in.

13          Counsel, I would ask you, please, when you state your

14   appearance, if your client is on the call with you, would you

15   please so indicate, and then I would also like the client to

16   put his or her appearance on the record after counsel is done.

17          Based on orders I issued in advance of today we asked

18   people to let us know who would be participating so we would

19   have a little bit of order on this call and it's my

20   understanding that we have only one client on the call.  But I

21   would ask counsel to please confirm that when you state your

22   appearance.

23          THE DEPUTY CLERK:  Starting with the government, state

24   your appearances.

25          MR. ADAMS:  Good afternoon, your Honor.  You have on

1    the line today Andrew Adams, Sarah Mortazavi, and Benet Kearney

2    for the government.

3          THE COURT:  Good afternoon, all.

4          THE DEPUTY CLERK:  I am going to go down the list of

5    the defendants.  Will their attorneys state their name for the

6    record.

7          Jorge Navarro.

8          MR. KREISS:  Good afternoon, your Honor, Jason Kreiss

9    on behalf of Jorge Navarro, and Mr. Navarro is actually present

10   with me on the call.

11         MR. ROTH:  Good afternoon, Judge, this is Melvin Roth.

12   I'm local counsel for Jorge Navarro.

13         THE COURT:  Good afternoon, gentlemen, and good

14   afternoon to you, Mr. Navarro.

15         DEFENDANT NAVARRO:  Good afternoon, Judge.

16         THE DEPUTY CLERK:  Erica Garcia.

17         MS. COLSON:  Good afternoon, your Honor, Debra Colson

18   for Erica Garcia.  Ms. Garcia is not on the line.

19         THE DEPUTY CLERK:  Marcos Zulueta.

20         MR. GOLDMAN:  Good afternoon, your Honor, Robert

21   Goldman for Mr. Zulueta, who is not present.

22         THE COURT:  Good afternoon, Mr. Goldman.

23         Mr. Goldman, before we proceed, have you taken care of

24   getting your *pro hac* papers in order?

25         MR. GOLDMAN:  Your Honor, I'm waiting for the

1      certificate of good standing.  The courthouses in Philadelphia

2      are pretty much closed as probably yours are.  I'm just waiting

3      for them to return.

4                THE COURT:  I understand.  I conditionally grant your

5      *pro hac* application in light of the difficulties of getting the

6      appropriate documentation.

7                MR. GOLDMAN:  Thank you very much, your Honor.

8                THE DEPUTY CLERK:  Michael Tannuzzo.

9                MR. ROLLOCK:  Donald Rollock here, your Honor.  Good

10     afternoon.  Good afternoon, staff.  Good afternoon colleagues.

11     My client is not present.

12                THE COURT:  Good afternoon, Mr. Rollock.

13                THE DEPUTY CLERK:  Gregory Skelton.

14                MS. KIRSHNER:  Good afternoon, your Honor, this is

15     Isabelle Kirshner.  I'm here with my partner, Charles Clayman.

16     Mr. Skelton is not on the phone.

17                THE COURT:  Good afternoon, Ms. Kirshner and

18     Mr. Clayman.

19                THE DEPUTY CLERK:  Ross Cohen.

20                MR. BARKET:  Good afternoon, your Honor, this is Bruce

21     Barket, along with Aida Leisenring.  And Mr. Cohen is on the

22     call, albeit in a different location.

23                THE COURT:  Good afternoon, first, to Mr. Cohen and

24     also good afternoon, Mr. Barket, and Ms. Leisenring.

25                DEFENDANT COHEN:  Good afternoon, your Honor.

1           THE DEPUTY CLERK:  Seth Fishman.

2           MR. FELDMAN:  Good afternoon, your Honor, colleague

3    from the defense side of the government, this is Andrew Feldman

4    on behalf of Dr. Seth Fishman.  Seth Fishman isn't on the call.

5           THE COURT:  Thank you, Mr. Feldman.  Good afternoon.

6           THE DEPUTY CLERK:  Lisa Gianelli.

7           MR. FASULO:  Good afternoon, your Honor, Louis Fasulo,

8    Fasulo Braverman & DiMaggio, for Ms. Gianelli, who is not on

9    the call today.

10          THE COURT:  Good afternoon, Mr. Fasulo location.

11          THE DEPUTY CLERK:  Jordan Fishman.

12          MR. JOYCE:  Good afternoon, this is Patrick Joyce on

13   behalf of Mr. Fishman, who is not present on the call.

14          THE COURT:  Thank you, Mr. Joyce.  Good afternoon.

15          THE DEPUTY CLERK:  Rick Dane, Jr.

16          MR. SCHOLAR:  Good afternoon, your Honor, Calvin

17   Scholar for Mr. Dane, and Mr. Dane is not on the call.

18          THE COURT:  Good afternoon, Mr. Scholar.  Thank you.

19          THE DEPUTY CLERK:  Christopher Oakes.

20          MR. FLYNN:  Good afternoon, your Honor, Terry Flynn

21   and Doreen Klein on behalf of Christopher Oakes.  He is not on

22   the line, your Honor.

23          THE COURT:  Counsel, I'm sorry.  I didn't catch your

24   name.

25          MR. FLYNN:  Terry Flynn.

1              THE COURT:  Thank you.  Good afternoon, all.

2              THE DEPUTY CLERK:  Jason Servis.

3              MS. GLAVIN:  Good afternoon.  Rita Glavin, along with

4    Michael Considine, for Jason Servis, who is not on this call.

5              THE COURT:  Good afternoon, Ms. Glavin, and

6    Mr. Considine.

7              THE DEPUTY CLERK:  Kristian Rhein.

8              MR. SCARING:  Good afternoon, your Honor, Stephen

9    Scaring for Kristian Rhein.  He is not on the call.

10             THE COURT:  Thank you, Mr. Scaring.  Good afternoon.

11             THE DEPUTY CLERK:  Michael Kegley, Jr.

12             MR. COX:  Good afternoon, your Honor, this is Scott

13   Cox on behalf of Mr. Kegley.  He is not participating today.

14             THE COURT:  Good afternoon, Mr. Cox.  Thank you.

15             THE DEPUTY CLERK:  Alexander Chan.

16             MR. BAUM:  Good afternoon, your Honor, this is Robert

17   Baum on behalf of Mr. Chan.  He is not on the line.

18             THE COURT:  Thank you, Mr. Baum.  Good afternoon.

19             THE DEPUTY CLERK:  Henry Argueta.

20             THE COURT:  Is counsel to Mr. Argueta on the line?  I

21   believe we have an appearance by Mr. Onaodowan.

22             MS. GLAVIN:  Your Honor, I will send an e-mail to

23   Mr. Argueta's counsel.

24             THE COURT:  Thank you very much, Ms. Glavin.  I

25   appreciate it.

1              THE DEPUTY CLERK:  Nicholas Surick.

2              MR. MOLLICA:  Andrew Mollica and Tom Donohue for the

3      defendant Nick Surick.

4              MR. DONOHUE:  And Mr. Surick is not on the line, your

5      Honor.  I have not filed my *pro hac vice* at this point because

6      I also need a certificate of good standing.

7              THE COURT:  Thank you.  Good afternoon, Mr. Mollica

8      and Mr. Donohue.

9              Mr. Donohue, I would suggest that you do what other

10     counsel have done, where you at least mail us your *pro hac*

11     papers and explain that you are waiting for whatever

12     documentation you need.  I assume you need your certificate of

13     good standing, and I will gladly act conditionally so you have

14     time to get the papers in.  For purposes of today I will admit

15     you *pro hac*.

16             MR. DONOHUE:  Thank you, your Honor.  I will do that

17     as soon as I get back to the office with my secretary.

18             THE COURT:  Not a problem.

19             THE DEPUTY CLERK:  Rebecca Linke.

20             MR. WIKSTROM:  David Wikstrom for Ms. Linke, and she

21     is not on the call.

22             THE COURT:  Good afternoon, Mr. Wikstrom.

23             THE DEPUTY CLERK:  Christopher Marino.

24             MR. OKSENHENDLER:  Good afternoon, your Honor, this is

25     Guy Oksenhendler for Mr. Marino.  He has waived his appearance

1    and is not on the line with me.

2         THE COURT:  Thank you very much.

3         I'm a little bit loathe to get started without

4    Mr. Onaodowan because I don't want to go back and repeat

5    things.

6         Ms. Glavin, did you get a response?

7         MS. GLAVIN:  No.  I just sent an e-mail.  I will call

8    her mobile phone.  It's actually Ms. Onaodowan.  I am going to

9    put you on mute and try her mobile right now.

10        THE COURT:  Thank you very much.

11        If everyone can please just bear with us for just a

12   moment.

13        While Ms. Glavin is checking on that, I would like to

14   address Mr. Cohen and Mr. Navarro, and I understand Ms.

15   Glavin's cocounsel, Mr. Considine, is on the line.  I don't

16   have a concern about proceeding.

17        I had directed in an order that I entered anyone who

18   required the services of an interpreter, please advise the

19   counsel for the government and that information would have been

20   passed on to me.  I have received no such notice.

21        But in the interest of being certain, let me first ask

22   Mr. Navarro.  First, Mr. Navarro, can you hear me?

23        DEFENDANT NAVARRO:  Yes, your Honor.

24        THE COURT:  Are you able to speak and understand

25   English?

1          DEFENDANT NAVARRO:  Yes, your Honor.

2          THE COURT:  Please, I would ask you to let me know

3    immediately if you are having any difficulty hearing me or

4    hearing or understanding what is taking place in today's

5    proceedings.  All right?

6          DEFENDANT NAVARRO:  Yes, your Honor.

7          THE COURT:  Mr. Cohen, the same question for you.  Can

8    you hear me, first?

9          DEFENDANT COHEN:  Yes, I can.

10          THE COURT:  Mr. Cohen, are you able to speak and to

11    understand English?

12          DEFENDANT COHEN:  Yes, your Honor.

13          THE COURT:  Thank you.

14          I would ask you, too, please immediately let us know

15    if you are having any difficulty hearing me or understanding me

16    or anybody who is speaking during today's proceeding.  All

17    right?

18          DEFENDANT COHEN:  Yes, your Honor.

19          THE COURT:  Thank you.

20          Ms. Glavin.

21          MS. GLAVIN:  No luck, your Honor.  I'm sending a text.

22    Stand by.

23          THE COURT:  Thank you.

24          MS. MORTAZAVI:  I have also texted counsel as well and

25    have not yet received a response.

1          THE COURT:  Do we have someone joining us, or did we

2     lose someone?

3          Is Ms. Glavin back with us?

4          MS. GLAVIN:  Your Honor, this is Rita Glavin.  I have

5     sent an even e-mail and a text and also left a voice mail on

6     the cell phone and have not heard anything back.

7          THE COURT:  I really appreciate your efforts.  And I

8     think it was Ms. Mortazavi said she also had reached out.  We

9     have 42 other people on the call for this proceeding, so I'm

10    not going to hold up the proceeding.  Notice was given and I am

11    going to move forward.

12         If people will give me just one second, I will be

13    right with you and we will get started.

14         First, just some preliminaries.  As everybody is

15    aware, we are in the midst of a COVID-19 pandemic, and I am

16    conducting this proceeding then pursuant to the authority

17    provided by Section 15002 of the CARES Act and standing orders

18    issued by our chief judge implementing that act.

19         All counsel in the case are appearing before me

20    telephonically.  As reflected on the docket in the case, each

21    of the 19 defendants named in the indictment has waived

22    appearance at arraignment.  I have carefully reviewed those

23    waivers, and I have found that each complies with Federal Rule

24    of Criminal Procedure 10(b), and I therefore entered orders

25    accepting each of the 19 waivers of appearance by the

1    defendants at today's arraignment.  As we have already noted,

2    though, two of the defendants are here and participating by

3    phone.  The others are not participating on today's call.

4            Just by way of background, as everybody is aware, this

5    proceeding originally was scheduled at the time of the March 9

6    date of presentment of defendants who were presented here in

7    the Southern District, and at that time an arraignment date of

8    March 23 was set.  At that time the assumption was that the

9    arraignments and conference would take place in person.  That

10   scheduling is reflected in the minute entry with respect to the

11   presentment entered on the docket by Magistrate Judge Wang.

12           Subsequently, I received correspondence from various

13   defense counsel asking permission to appear telephonically.

14   Some of those letters included waivers of appearance by

15   clients, some did not.  I also received a letter from the

16   government, dated March 12, that's at ECF 53, stating that the

17   government had no objection to counsel and or defendant's -- to

18   the extent as the Court deemed it an appropriate accommodation

19   in light of growing concerns over the coronavirus.

20           In response, I issued an order on March 16 reminding

21   everyone of the requirements in the Federal Rules of Criminal

22   Procedure that a defendant be physically present at his or her

23   own arraignment unless the Court had accepted a waiver of

24   appearance which complied with Rule 10(b).

25           Throughout March, the COVID-19 pandemic continued to

escalate and was the subject of a declaration of a national
emergency by the president, orders by the governor of New York
State restricting the number of people to assemble in one
place, and several standing orders were issued by the chief
judge of the Southern District of New York imposing various
restrictions on court access and proceedings.

During March, after the defendants were presented
before Magistrate Judge Wang on March 9 and throughout the
country in the districts where other defendants were arrested,
17 of the 19 defendants filed waivers of appearance at the
arraignment which was then scheduled for March 23.  Due to
mounting concerns about assembling such a large group of people
as those involved in this case in the midst of a pandemic, on
March 22, I adjourned the arraignment and conference and
requested that counsel to the two defendants who had not
previously waived appearance consult with their clients and let
the Court know whether the clients wished to waive appearance.

I want to be very clear that had any defendant wished
not to waive appearance at his or her arraignment, it was my
intention to make arrangements for individual proceedings, to
conduct those arraignments one at a time.  Each of the two
defendants who had not previously filed waivers either did so
shortly after my March 22 letter or advised the Court promptly
that he intended to do so.

On March 27, I entered an order rescheduling the

arraignment and conference for today to be held telephonically.
Notwithstanding any waiver of appearance by a defendant, each
defendant had the opportunity to participate in today's
proceeding by telephone if he or she chose to do so and indeed,
as we have noted, two of the defendants are on the line for
today's proceeding.  The dial-in number and access code for
today's proceedings were included in my order and were posted
on ECF.

         I note for the record that the chief judge of this
Court has issued a standing order at 10-468, dated March 30.
That standing order implements the CARES Act and the finding by
the Judicial Conference of the United States that:  "Emergency
conditions due to the national emergency declared by the
president with respect to COVID-19 materially have affected and
will materially affect the functioning of the federal courts
generally."

         That standing order by the chief judge then authorized
the use of video teleconferencing, or teleconferencing if video
conferencing is not reasonably available, with the consent of
the defendant after consultation with counsel for certain
proceedings, including an arraignment.

         By virtue of people's participation in the call today
and the waivers that have previously been filed, I understand
that each of the defendants consents to our proceeding by
teleconferencing today.  If my understanding is incorrect, I

1    would ask counsel to please so state now.

2         Hearing no objection then, I do find that each of the

3    defendants have consented to our proceeding by teleconference

4    today.  I find also that the interests of justice are served by

5    our moving forward with this proceeding today and not delaying

6    it beyond today.  I find that the proceeding cannot be

7    conducted in person without seriously jeopardizing public

8    health and safety.  I find further that holding this

9    proceeding, the arraignment and the conference, by video

10   conference would have been impractical, if not impossible under

11   all the circumstances, particularly given the large number of

12   parties and counsel involved.

13        Now, as I said, as of today, each of the 19 defendants

14   has filed a waiver of appearance at today's indictment.  I

15   carefully reviewed each of those waivers.  Initially, a couple

16   of them were not accepted by the Court due to various

17   deficiencies, but ultimately any deficiencies were corrected,

18   and I have now entered orders accepting waiver of appearance at

19   arraignment by all 19 defendants.

20        As I said before, virtually all of the counsel

21   appearing for defendants that requested telephonic appearance

22   and counsel for the government have advised it does not object

23   to proceeding telephonically.  In a few moments, when we turn

24   to the arraignment itself, I will ask counsel -- and if they

25   are on the call, the defendants -- to confirm their waivers and

1    their consent to proceeding by teleconference rather than in

2    person.

3            Now, one final note.  Notwithstanding the COVID-19

4    pandemic, the Court remains open for business and for public

5    access to our proceedings.  The posting of the dial-in

6    information for today's arraignment and filed on ECF makes it

7    possible for access by not only all of the parties, but also

8    their families, the press, and the public.

9            I do remind everyone on the call, however, of the

10   general prohibition against photographing, recording, or

11   rebroadcasting any court proceedings in federal court.

12   Violation of these prohibitions may result in sanctions,

13   including the removal of Court-issued media credentials,

14   restricted entry to future hearings, denial of entry to future

15   hearings, or any other sanctions that the Court deems

16   necessary.

17           I apologize, but given the way we are doing this, some

18   of is necessary for the record.

19           In order that we have an orderly process today, we are

20   going to call on people for these proceedings.  I'll then ask

21   at the end if anybody else wishes to add anything or to be

22   heard.  When I do call on you, please identify yourself by name

23   just so we have a clear record.  Before anyone speaks, please

24   state your name for the record.  Please speak slowly.

25           I should have thanked our court reporter, Mr.

Greenblum, who is on the line with us.  Everything we are doing

today will be recorded and there will be a transcript

available.

    If you are not speaking, I remind you to please mute

your line.  There does continue to be some background noise

that I keep hearing.

    I ask you, also, please don't interrupt each other or

me during the conference.  If you do, it's going to be very

difficult for us to have any kind of an accurate record of

these proceedings.  I promise I will give each attorney an

opportunity to make additional comments or ask questions after

we go through the list of calling on people for the business

that we need to take care of today.

    This is the initial appearance by counsel or the

parties before me in this case.  It's my understanding that

each defendant has been presented either here in the Southern

District on March 9 before Magistrate Judge Wang, or in the

district where he or she was arrested shortly after arrest.

    I understand, further, that with respect to the

defendants who were arrested outside of the Southern District

we need to discuss, first, whether those defendants should

remain released and, if so, what the conditions of release

should be since I'm told that the conditions that were imposed

at the time of initial presentment may or may not be

enforceable here in the Southern District.  And, in any event,

1   they are likely void once those defendants are appearing before

2   me and subject to the jurisdiction in the Southern District.

3        I do have several updates that I received late

4   yesterday afternoon.  I received from pretrial services a

5   series of reports for the 10 defendants who were presented

6   outside the Southern District.  I had intended to say to

7   counsel that assuming the government has no objection to these

8   defendants remaining released on certain conditions that they

9   confer with counsel and present to me by Monday a joint

10  proposal.

11       I received about an hour ago from counsel for the

12  government that exact submission.  I'll turn to that in a

13  minute, but let me just first ask the government, for the

14  record, to describe when the defendants were arrested,

15  presented, indicted.  If what I have just recited is accurate,

16  that may be sufficient.  And then we can turn to a discussion

17  about the bail conditions that you've proposed to me.

18       Counsel for the government

19       MR. ADAMS:  Thank you, your Honor.  Andrew Adams to

20  begin, and then I am going to turn over to Ms. Mortazavi to

21  talk about the specifics of the conditions.

22       The quick answer is, your recitation was accurate with

23  respect to the dates of arrest and presentments.  Each of the

24  defendants was presented on the day or the following day of his

25  or her respective arrest, almost all on March 9 of this year.

1    And Mr. Fishman submitted a letter this morning.

2              THE COURT:  Thank you for that.

3              MR. ADAMS:  Ms. Mortazavi forwarded with respect to

4    the out-of-district defendants for whom a Southern District

5    bail package has not yet been determined, that is, all of the

6    defendants arrested outside of the district with the exception

7    of Seth Fishman.  We do have at least an understanding with

8    each defense counsel as to a bail package to propose to the

9    Court and are happy to do that now or at the end of the

10   conference, as you see fit.

11             THE COURT:  If you give me one moment.  I do want to

12   be certain that all defendants who are in need of having

13   counsel appointed, that has been taken care of, right?

14             MR. ADAMS:  That has been taken care of.  Certain

15   defendants have retained counsel separately, but all defendants

16   have counsel.

17             THE COURT:  There were 10 defendants who were

18   presented outside of the Southern District.  I just would like

19   you to confirm on the record -- first, let me ask the

20   government, you did receive copies of the pretrial services

21   report on each of the 10 defendants arrested and presented

22   outside of the Southern District, correct?

23             MS. MORTAZAVI:  That's correct, your Honor.

24             THE COURT:  Counsel to Mr. Navarro, did you receive

25   the report relating to your client?

 1                MR. KREISS:  I have received it and I have reviewed it

 2    with Mr. Navarro.

 3                THE COURT:  Counsel to Ms. Garcia.

 4                MS. COLSON:  Yes, I have received it and I have

 5    reviewed it, your Honor.

 6                THE COURT:  Counsel to Mr. Zulueta.

 7                MR. GOLDMAN:  Yes, your Honor, I have.

 8                THE COURT:  Counsel, for Mr. Skelton.

 9                MS. KIRSHNER:  Yes, your Honor.  I have received it

10    and I have reviewed it with Mr. Skelton.

11                THE COURT:  Counsel to Ms. Gianelli.

12                MR. FASULO:  Yes, your Honor.  I have reviewed it with

13    my client, Ms. Gianelli, and I have received it.

14                THE COURT:  Counsel to Jordan Fishman.

15                MR. JOYCE:  Your Honor, it's Patrick Joyce.  I have

16    received a copy of the report and I have reviewed it with

17    Mr. Fishman.

18                THE COURT:  Counsel to Rick Dane.

19                MR. SCHOLAR:  Yes, I received the report.

20                THE COURT:  Counsel to Mr. Oakes, Christopher Oakes.

21                MR. FLYNN:  Yes, we reviewed it with our clients and

22    we spoke with Ms. Mortazavi today.  There was one correction to

23    it.  I reside in the Western District of New York.

24                THE COURT:  I have the corrected sheet.

25                Counsel for Mr. Servis.

1          MS. GLAVIN:  Yes, your Honor.  Yes, I received the

2     paperwork.

3          THE COURT:  And you have discussed it with Mr. Servis?

4          MS. GLAVIN:  Yes, discussed it with Mr. Servis.

5          THE COURT:  Counsel for Mr. Kegley.

6          MR. COX:  Judge, I received the rather lengthy report

7     that was prepared by the probation office in Kentucky and

8     reviewed that with my client.  I also received the one that was

9     conducted by the probation office in your district.  I did not

10    review that with Mr. Kegley because he is ill and hospitalized.

11    But it didn't change anything.  It basically just said nothing

12    has happened with him since the initial report was prepared.

13         THE COURT:  First of all, these are reports by

14    pretrial services, right?

15         MR. COX:  Yes.

16         THE COURT:  In the Southern District we have separate

17    probation and pretrial services.

18         I received from Ms. Mortazavi an e-mail telling me

19    that she had conferred with counsel to the various defendants,

20    and I think that she also forwarded this proposal to

21    Ms. Cunningham in pretrial services.

22         Ms. Cunningham, is that correct?

23         MS. CUNNINGHAM:  Yes, your Honor.  I was provided that

24    prior to the hearing.

25         THE COURT:  Is there anything that pretrial services

1    wishes to say for the record?

2             MS. CUNNINGHAM:  No, your Honor, not at this time.

3             THE COURT:  Ms. Mortazavi, I will hear from you and

4    then I have a few observations and comments I'd like to make.

5             MS. MORTAZAVI:  Certainly, your Honor.

6             With respect to all these proposals, I believe that

7    counsel are in agreement.  Each of them are tailored to the

8    defendant's particular circumstances, and we believe that each

9    of these packages mitigates any risk of flight or

10   dangerousness, and I'm happy to speak to any particular

11   questions that the Court has or go through the package

12   defendant by defendant, as the Court prefers.

13            THE COURT:  We don't need to go through this defendant

14   by defendant, but actually I do need to raise with counsel to

15   each of these 10 defendants and, frankly, with counsel to all

16   defendants, because I have one observation that pertains to a

17   bail condition that was also imposed here in the Southern

18   District.

19            We do not have a waiver by the defendants of their

20   right to be present when bail modifications are talked about or

21   made or, I guess, in the case of these 10 people, where bail

22   conditions are first imposed, or of their right to have those

23   conditions put on the record in open court.

24            Do I have a position of counsel with regard to that

25   issue?

1          MR. FASULO:  Judge, I have discussed waiver of her

2     appearance for purposes of the bail application today.  She

3     consents to us going ahead with the bail package.  I discussed

4     the package with Ms. Genially.  She understood the package.  So

5     I waive her appearance as that was what her wish was when I

6     spoke with her last night.

7          THE COURT:  Thank you.

8          I think that I should go through the list of

9     defendants to hear what counsel has to say in that regard.

10    Whether we need to have a separate hearing and give clients the

11    opportunity to be present, or whether counsel has discussed

12    this with the client, they can put on the record that the

13    clients knowingly waived being present at this conversation.

14          Mr. Navarro.

15          MR. KREISS:  Mr. Navarro is present on the call, and I

16    have discussed the bail package with him as presented to the

17    Court.

18          THE COURT:  Ms. Garcia.

19          MS. COLSON:  I have discussed the proposed bail

20    conditions with Ms. Garcia.  She consents to those conditions

21    and she also consents to waiving her appearance on this call.

22          THE COURT:  Counsel to Mr. Zulueta.

23          MR. GOLDMAN:  Your Honor, I have spoken with my client

24    concerning the conditions and he is in agreement with those,

25    and he waives his presence.

1          THE COURT:  Mr. Skelton.

2          MS. KIRSHNER:  Your Honor, just before this call I

3    spoke with Mr. Skelton.  He is aware of the conditions.  He

4    agrees to them and he waives his presence.

5          THE COURT:  Mr. Jordan Fishman.

6          MR. JOYCE:  Your Honor, this morning I had a

7    conversation with the AUSA.  I then spoke to my client about

8    the conditions, which he consents to, and told me he would

9    waive his appearance for this proceeding.

10          THE COURT:  Mr. Oakes.

11          MR. FLYNN:  Your Honor, I also spoke with my client,

12   Mr. Oakes, and I discussed the package and he understands the

13   conditions and he consented to the waiver.

14          THE COURT:  Counsel for Mr. Servis.

15          MR. CONSIDINE:  Your Honor, we spoke to our client, he

16   agreed to the conditions proposed by the government and waives

17   appearance here today.

18          THE COURT:  Counsel for Mr. Kegley.

19          MR. COX:  Your Honor, when he first presented before

20   the magistrate judge in the Eastern District of Kentucky, all

21   of the conditions that the prosecutor now is proposing to the

22   Court were also offered to the Court, and my client and I

23   discussed it and we have no objection to any of them.

24          The only thing that's changed is the government is

25   requesting $100,000 unsecured bond signed by two others, and he

1   had no objection to that when we were before the Court in

2   Lexington.

3          Unfortunately, he had surgery Tuesday, so I have not

4   talked to him about the agreement that I have reached with the

5   government, but it's identical to the one in Lexington.

6          So I'm comfortable, if you are, waiving his appearance

7   and telling you that he agreed to these conditions when we were

8   before the Court in Kentucky.

9          THE COURT:  I will accept for representation that your

10  client waives participation today.  If for any reason that is

11  not accurate, you can come back to the Court and ask to have us

12  reconsider anything that is agreed to or so-ordered today.

13         MR. COX:  Thank you, Judge.

14         THE COURT:  A particular bail condition.

15         Counsel for the government, I have a question for you.

16  With respect to one condition that appears throughout each of

17  these, I think, that you have given me today and, frankly, I

18  think it was in each of the bail packages that were put in

19  place on March 9 with respect to the Southern District

20  proceedings.  You have a bail condition that the defendant will

21  have no contact with any racehorse without supervision of the

22  owner of the property where the horse is located.  What is that

23  aimed at achieving?

24         MS. MORTAZAVI:  Given the nature of the charges here,

25  your Honor, the defendants were engaged in covertly

administering performance-enhancing drugs to racehorses.  We

thought it was appropriate to mitigate the concern that that

conduct may continue to require some form of supervision of the

defendants if they are going to continue having physical

contact with racehorses.

          THE COURT:  That makes good sense to me.  What is the

owner of the property, who may or may not know anything about

what it is that a veterinarian or a trainer or some other

professional is doing, going to do in terms of supervision to

make sure that your objective is --

          MS. MORTAZAVI:  Your Honor, it certainly attempts to

strike a balance, given that we cannot be everywhere at once

and monitor these defendants completely.  It still permits some

level of oversight.

          For example, in many jurisdictions it is against the

licensing authority's rules for trainers to possess certain

equipment, such as syringes or an electroshock machine.  And

having at least a person present to observe whether such

devices are possessed by any of the defendants would be a level

of oversight more than what we would have absent that

condition.

          THE COURT:  I hear and I understand that.  How is the

owner of the property where the horse is located supposed to

know what those restrictions are?

          Which also brings me to another question I have.  You

1    have a condition that criminal charges be reported to licensing

2    authorities in the state where these defendants are licensed.

3    I am fine with that concept, but I would like to see, in

4    addition, that the defendants have to comply with licensing

5    regimes to which they are subject.

6            For example, you are telling me that you want the

7    owner of the property to be there so that they will know

8    whether the defendant is using something that the licensing

9    authorities say they shouldn't be using.  To link the two here,

10   that you don't just report the charges to the licensing

11   authorities, but that the defendants must comply with whatever

12   those licensing requirements are.

13           MS. MORTAZAVI:  The government has no objection to

14   adding that as a condition.

15           THE COURT:  The other point I have, and then I will

16   hear from any defendant that wishes to be heard, is that the

17   defendants also need to comply with any orders issued by

18   thoroughbred regulatory bodies, tracks, or racing associations.

19           The reason I'm asking about this is that I have gotten

20   communications from counsel to some defendants saying, well, I

21   was suspended and there is a hearing.  To the extent that is in

22   fact the case, it ought to be a condition of release that the

23   defendants comply with an order or any other orders issued by

24   thoroughbred racing regulatory bodies, tracks, or racing

25   associations.

1          MS. MORTAZAVI:  The government would have no objection

2    to that condition either, with the one caveat that I believe

3    the Court mentioned thoroughbred racing authorities.  There are

4    some defendants here who race standard-bred horses.  We would

5    wish to encompass that as well.

6          MS. GLAVIN:  Your Honor, if I might be heard on that

7    particular suggested modification.  I don't know with respect

8    to each of the state's licensing authorities if, for instance,

9    they may have an order about appearing at a hearing.  I just

10   want to make sure that we are not in a position where any one

11   of our clients that may have Fifth Amendment rights, that such

12   a condition, that they comply with orders of those various

13   racing authorities would implicate their Fifth Amendment rights

14   as it pertains to the criminal case.

15         THE COURT:  That is a fair and a good point,

16   Ms. Glavin.  But I would assume that you could work out with

17   the government language where you would either add that as an

18   exception or where you would somehow -- work out wording to, of

19   course, protect the Fifth Amendment rights of defendants, but

20   conceptually I assume there is no problem with your client

21   otherwise complying with it, right?

22         MS. GLAVIN:  Yes.  Just so long as it does not

23   implicate the criminal case and their constitutional rights.

24         THE COURT:  We can add that as a caveat to what's

25   going to be, I take it, added as a condition for each

1    defendant.

2            MR. SCARRING:  Judge, it would probably be a good idea

3    to have the government state what their understanding is so

4    that we have a clear understanding before this call is over

5    regarding that.

6            THE COURT:  What I am going to do is, I am going to

7    revert back to my original proposal, which is that you all

8    confer in 48 hours at the end of this call and on Monday get me

9    a revised list that reflects a joint proposal by the parties.

10   It would include these two concepts that I'm asking to be

11   included.

12           Does anybody else wish to be heard?

13           It is my suggestion then that the government and

14   counsel to all defendants because I'm asking that these two

15   modifications be made even to the previously in-place

16   conditions for people presented in the Southern District.  I

17   would ask that the government confer with counsel to all

18   defendants, and by no later than Monday submit to me a joint

19   proposal.

20           The other thing that you need to confer with defense

21   counsel -- and, frankly, with perhaps Mr. Ortiz or people in

22   pretrial services -- is what paperwork needs to be taken care

23   of.  I see that for the new conditions you are allowing three

24   weeks and I understand that because people are going to have

25   difficulty with taking care of paperwork and that sort of

1    thing.  I'm fine with that.  I am going to leave it in the

2    hands of counsel to the government and to the defendants to

3    work out how you are going to get the necessary paperwork done.

4              Is that acceptable to all?

5              MS. MORTAZAVI:  That is acceptable, your Honor.  And

6    we have already conferred with some counsel as to the mechanics

7    of ensuring that bond signing can occur.

8              THE COURT:  Anybody from the defense side have any

9    objection or is that acceptable to all?

10             Silence will be deemed acceptance.

11             I will wait to hear from you all on Monday, and we

12   will get the necessary orders or bail slips done to have these

13   conditions in place then.

14             Thank you, all.

15             Let's move on.

16             MS. CUNNINGHAM:  This is Erin Cunningham from pretrial

17   services.  I want some clarification on our end.  Are the

18   conditions proposed by defense counsel and the government going

19   to be ordered today, or is everything going to be ordered on

20   Monday?

21             THE COURT:  I was intending to order it on Monday with

22   the existing conditions to remain.  Is that problematic?

23             MS. CUNNINGHAM:  No.  We can add a condition on

24   Monday.  I guess for the 10 defendants that are being presented

25   for the first time in this district, the conditions, I'm

1    assuming, and any counsel from the government correct me if I'm

2    wrong, the conditions that were proposed should be ordered

3    today with the idea that the additional condition could be

4    ordered on Monday.

5              THE COURT:  Counsel for the government.

6              MS. MORTAZAVI:  I believe your Honor can continue the

7    bail hearing for purposes of entering a final bail package.

8              THE COURT:  This is what I was proposing.  That would

9    mean that the existing conditions that were imposed where these

10   defendants were originally presented would remain in effect.

11             MS. CUNNINGHAM:  I just wanted to clarify from my end.

12   Thank you.

13             THE COURT:  Thank you, all.

14             Before we leave the bail conditions I did have two

15   other questions.

16             With respect to Mr. Navarro, unlike every other party,

17   I'm not seeing surrender of any travel documents.

18             MR. KREISS:  Your Honor, Mr. Navarro's passport was

19   seized by the agents at the time of arrest.

20             THE COURT:  Thank you.

21             MS. MORTAZAVI:  Your Honor, I think that may have also

22   been an oversight in the standard conditions if the defendant

23   makes no new applications for travel documents, and we would be

24   seeking that for Mr. Navarro as well.

25             THE COURT:  Counsel.

1          MR. KREISS:  No objection, your Honor.

2          THE COURT:  The only other comment that I have or

3    question is with respect to Mr. Servis.  Almost all of the

4    other conditions talk about locations that the defendant may

5    travel to and then it says points in between for purposes of

6    transit.  This does not have the transit limitation.  Is that

7    just an oversight?

8          MS. MORTAZAVI:  Yes, your Honor.  This is merely an

9    oversight.

10         THE COURT:  Ms. Glavin or Mr. Considine.

11         MS. GLAVIN:  Yes, it's our understanding.

12         THE COURT:  With that modification then you will get

13   me a document on Monday.  But, in the meantime, the existing

14   bail conditions originally put in place at the time of

15   presentment remain in effect, and I will so order promptly,

16   after I receive the revised joint proposal on Monday for the 10

17   defendants.  Correct?

18         Let's move on then to the arraignment.  As you are all

19   aware, the defendants have been named in a six-count

20   indictment, No. 20 CR 160, charging them with one or more

21   counts of drug adulteration and misbranding conspiracy, in

22   violation of Title 18, United States Code, Section 371 and

23   obstruction in violation of Title 18, United States Code,

24   Section 1512(b)(3) and (2).

25         I am going now to call each defendant by name.  When I

1   do so, I would ask counsel to that defendant, or the defendant

2   himself in the case of Messrs. Navarro and Cohen, to first

3   acknowledge that you hear me and understand I'm speaking with

4   you.  I would then ask counsel, and, if present, the defendant,

5   a series of questions.  The first series of questions go to

6   defendant's waiver of the right to be here at this arraignment,

7   and I will then move on to the arraignment itself.

8          Does everyone understand?

9          Both counsel and Mr. Navarro, first, I have received

10  and accepted a written waiver of the right to be present at

11  today's arraignment from Mr. Navarro.  That's at ECF 142, and I

12  accepted that pursuant to an order at ECF 145.  I would like to

13  confirm that the defendant was advised of his right to appear,

14  understood that right, and voluntarily gave up that right.

15         Without going through a long series of questions with

16  each counsel, what I am really trying to get to the heart of, I

17  would like for counsel to please describe to the Court how the

18  waiver document was provided or furnished to the defendant, the

19  circumstances, not the substance, obviously.  I am not trying

20  to invade privilege here in which you discussed that document

21  with him or her.

22         Did you explain to the defendant that he or she had a

23  right to be present for the arraignment?  And do you believe,

24  based on that conversation, understood that right and knowingly

25  and willingly gave up that right.  Then I'd like to have

1   confirmation that it is the defendant's signature and your

2   signature that appears on that document.

3          Counsel to Mr. Navarro.

4          MR. KREISS:  Yes, your Honor.  I had a waiver drafted.

5   I explained it to Mr. Navarro.  I explained he had the right to

6   be present before the Court personally.  In light of the

7   COVID-19 situation, I explained to him the fact that the Court

8   was going to be performing this hearing telephonically.  We

9   discussed the waiver.  Mr. Navarro has executed the waiver and

10  wishes to proceed forward telephonically.

11         THE COURT:  Thank you.

12         Is that your signature and your signature that appear

13  on the waiver document?

14         MR. KREISS:  Yes, it is, your Honor.

15         DEFENDANT NAVARRO:  Yes, your Honor.

16         THE COURT:  Thank you, Mr. Navarro.

17         I am going to ask you if you heard what your counsel

18  just said and that is all accurate, correct?

19         DEFENDANT NAVARRO:  Yes, your Honor.

20         THE COURT:  There is nothing you wish to add?

21         DEFENDANT NAVARRO:  No, your Honor.

22         THE COURT:  Pursuant to Rule 10(b) of the Federal

23  Rules of Criminal Procedure, I find a knowing and voluntary

24  waiver by Mr. Navarro of his right to be present in person in a

25  courtroom for his arraignment.

1          Now, let's move on to the arraignment itself.

2          Mr. Navarro, have you seen a copy of the indictment?

3          DEFENDANT NAVARRO:  Yes, your Honor.

4          THE COURT:  Have you discussed it with your lawyer?

5          DEFENDANT NAVARRO:  Yes, your Honor.

6          THE COURT:  Do you wish for me to read it to you or do

7    you waive its public reading?

8          DEFENDANT NAVARRO:  I am going to waive it, your

9    Honor.

10          THE COURT:  You are charged in Count One and Three of

11   the indictment, both drug adulteration and misbranding

12   conspiracy counts.

13          How do you plead?

14          DEFENDANT NAVARRO:  Not guilty, your Honor.

15          THE COURT:  Thank you, Mr. Navarro.

16          Defendant Garcia.

17          MS. COLSON:  I drafted the waiver.  I sent a copy of

18   it to Ms. Garcia by e-mail.  I discussed it with her over the

19   telephone.  I explained to her that she had the right to be

20   present.  I believe she understands that right and has

21   knowingly waived it.  The written waiver contains both my

22   signature and Ms. Garcia's signature.

23          THE COURT:  The waiver is filed on the docket at ECF

24   83.  It was accepted by the Court and my order is ECF 88.

25          Based on the representations of counsel and the

1   written waiver that was filed, I find, under Federal Rule 10(b)

2   of the Federal Rules of Criminal Procedure, that the defendant

3   Erica Garcia has knowingly and voluntarily waived her right to

4   be present for her arraignment.

5        Ms. Colson, Mr. Garcia is charged with Count One, drug

6   adulteration and misbranding.  She has in her waiver stated

7   that she has seen a copy of the indictment.  Has she discussed

8   that indictment with you?

9        MS. COLSON:  Yes, I have reviewed a copy of the

10  indictment with Ms. Garcia.

11       THE COURT:  You on her behalf waive its public

12  reading?

13       MS. COLSON:  I waive its public reading and enter a

14  plea of not guilty on Count One on her behalf.

15       THE COURT:  Thank you.

16       Defendant Zulueta.  Mr. Goldman.

17       MR. GOLDMAN:  I discussed the waiver document with my

18  client by telephone.  I explained his rights to appear for his

19  arraignment.  He voluntarily waived his appearance and the

20  signature on that document is that of myself and my client.

21       THE COURT:  Thank you.

22       The waiver and order accepting that waiver are at ECF

23  146 on the docket.

24       Mr. Goldman, Mr. Zulueta is charged in Count One, drug

25  adulteration and misbranding.  He recites in his waiver that he

1  has a copy of the indictment.  Has he discussed the charges

2  against him with you?

3           MR. GOLDMAN:  Yes, your Honor.

4           THE COURT:  And I assume you waive public reading of

5  the indictment on his behalf?

6           MR. GOLDMAN:  That's correct, your Honor.

7           THE COURT:  And does he plead guilty or not guilty to

8  the charges against him?

9           MR. GOLDMAN:  Not guilty, your Honor.

10          THE COURT:  Thank you.

11          Defendant Michael Tannuzzo.

12          MR. ROLLOCK:  Good afternoon, Judge.  Donald Rollock

13  for Mr. Tannuzzo.

14          THE COURT:  Thank you, Mr. Rollock.

15          Please describe to me the circumstances in which the

16  waiver was prepared.

17          MR. ROLLOCK:  Your Honor, I prepared the waiver.  I

18  met with my client in person and went over the waiver with him.

19  I discussed the indictment with him, went over the entire

20  indictment with him, and he has authorized me to waive his

21  appearance for today, also enter a plea of not guilty to

22  charges against him, and he is waiving a public reading of said

23  charges.

24          THE COURT:  It was your understanding that he

25  understood the charges against him?

1          MR. ROLLOCK:  Yes, your Honor, he understood the

2     charges.  We talked at length about them and he signed and

3     executed a waiver in front of me, and I did submit it on ECF.

4          THE COURT:  I find, under Rule 10(b) of the Federal

5     Rules of Criminal Procedure, Mr. Tannuzzo has voluntary waived

6     his right to be present at this arraignment.

7          Counsel has also answered my questions that his client

8     has seen a copy of the indictment.  He has discussed it with

9     his client.  I assume, counsel, that you waive a public reading

10    of the indictment on your client's behalf?

11         MR. ROLLOCK:  I have so waived that reading.

12         THE COURT:  And your client pleads.

13         MR. ROLLOCK:  Not guilty.

14         THE COURT:  Thank you.

15         Gregory Skelton.

16         MS. KIRSHNER:  Isabelle Kirshner for Dr. Skelton, your

17    Honor.  I discussed the waiver with Dr. Skelton.  I provided a

18    copy to him.  I provided it to him electronically.  He signed

19    it.  He returned it.  I signed it.  I submitted it to the

20    Court.  He understood that he had a right to appear.  He lives

21    in Indiana and chose not to.  I discussed the indictment with

22    him.  I waived his public appearance and enter a plea of not

23    guilty on his behalf.

24         THE COURT:  I find, pursuant to Rule 10(b) of the

25    Federal Rules of Criminal Procedure, that Mr. Skelton has

1   knowingly and voluntarily waived his right to be present for

2   arraignment.

3          Mr. Skelton is charged in Count One, drug adulteration

4   and misbranding.

5          Based on counsel's recitation, I find that Mr. Skelton

6   has seen a copy of the indictment and discussed it with his

7   counsel.

8          I assume, counsel, you may have said this, but do you

9   waive a public reading of the indictment on your client's

10  behalf?

11         MS. KIRSHNER:  I waive the public reading and enter a

12  plea of not guilty on his behalf.

13         THE COURT:  Thank you, counsel.

14         Mr. Cohen is present on this call, so I will first ask

15  counsel to talk to me just about the waiver and how that came

16  into being.

17         MR. BARKET:  Good afternoon, your Honor.  We discussed

18  with Mr. Cohen his right to be present or to waive that right.

19  He chose to waive it.  Our office drafted the waiver.  It's his

20  signature and I believe my signature at the bottom of the

21  document, and he is willing to move forward telephonically.

22         THE COURT:  Counsel, what does that mean, you believe

23  your signature?

24         MR. BARKET:  I'm sorry, Judge.  I was looking at my

25  partner here, and I signed it.  It was either me or her and it

1   was me.

2          THE COURT:  And that is your signature in fact, right?

3          MR. BARKET:  Yes.  I believe I wrote my name

4   underneath it because the signature is not always as legible as

5   it could be.

6          THE COURT:  My point is, your I believe is not

7   expressing any skepticism that it is your signature.

8          MR. BARKET:  No.  It is my signature, Judge.

9          THE COURT:  Thank you.

10         Let me turn to Mr. Cohen.

11         Mr. Cohen, that is your signature on the document?

12         DEFENDANT COHEN:  Yes, your Honor, it is.

13         THE COURT:  And you heard all of what I just discussed

14   with your attorney, correct?

15         DEFENDANT COHEN:  Yes, I did.

16         THE COURT:  Do you agree with what your counsel has

17   represented to the Court?

18         DEFENDANT COHEN:  Yes, your Honor.

19         THE COURT:  Is there anything you would like to add?

20         DEFENDANT COHEN:  No, your Honor.

21         THE COURT:  In any event, you are on this proceeding,

22   but you voluntarily give up your right to be present in a

23   courtroom for your arraignment, correct?

24         DEFENDANT COHEN:  Yes, your Honor.

25         THE COURT:  Pursuant to Rule 10(b) of the Federal

1    Rules of Criminal Procedure, I find a knowing and voluntary

2    waiver by Mr. Cohen of his right to be present physically for

3    arraignment.

4           Now, Mr. Cohen, have you seen a copy of the indictment

5    itself?

6           DEFENDANT COHEN:  Yes, I have, your Honor.

7           THE COURT:  And have you discussed it with your

8    lawyer?

9           DEFENDANT COHEN:  Yes, I have, your Honor.

10          THE COURT:  You are charged in Count One of the

11   indictment with drug adulteration and misbranding conspiracy.

12   Do you need me to read that into the record or do you waive

13   public reading?

14          DEFENDANT COHEN:  I waive public reading, your Honor.

15          THE COURT:  And how do you plead?

16          DEFENDANT COHEN:  I plead not guilty, your Honor.

17          THE COURT:  Thank you, Mr. Cohen.

18          Mr. Fishman, through counsel Mr. Feldman.

19          MR. FELDMAN:  Yes, your Honor.  Thank you.

20          With respect to the waiver, I sent the waiver to

21   Dr. Fishman on March 11, 2019.  The waiver contains my

22   signature and Dr. Fishman's signature.  Dr. Fishman and I

23   discussed over the phone his right to be present.  Dr. Fishman

24   understood that right and Dr. Fishman knowingly waived the

25   right to be present at the arraignment.

1      I then submitted the waiver and a letter with the

2  waiver to the Court on March 13, 2020, which is docket entry

3  58.

4      I also discussed and reviewed with Dr. Fishman the

5  indictment and all of the allegations in the indictment.

6  Dr. Fishman understands the charges against him in the

7  indictment and waives a public reading of the indictment in

8  this case.  Dr. Fishman pleads not guilty to Counts One through

9  Two in the indictment and demands a trial by injury on Counts

10  One through Two in the indictment.

11      THE COURT:  Thank you, counsel.

12      Pursuant to the representations of counsel, I do find

13  that Mr. Fishman has knowingly and voluntarily waived his right

14  to be present for arraignment, and counsel has entered a plea

15  of not guilty on his behalf.

16      Ms. Gianelli.  Mr. Fasulo.

17      MR. FASULO:  Judge, I have received a copy of the

18  waiver.  I reviewed the waiver with my client, Ms. Gianelli,

19  who lives in Delaware.  She understood the waiver.  She signed

20  the waiver, she sent the waiver back to the Court.  That is her

21  signature, she confirmed to me, and she waives her right to be

22  in the appearance today.  In addition, I sent her --

23      THE COURT:  Is your signature on the document?

24      MR. FASULO:  Yes, Judge.  I signed the document.

25      THE COURT:  That is your signature.

1        I find, pursuant to Rule 10(b) of the Federal Rules of

2   Criminal Procedure, that Ms. Gianelli has knowingly and

3   voluntarily waived her right to be present for arraignment.

4   She is charged with Count Two, drug adulteration and

5   misbranding.

6        Counsel, you have represented to me, I believe, that

7   Ms. Gianelli has seen a copy of the indictment and you have

8   discussed it with her, correct?

9        MR. FASULO:  Judge, I sent a copy of the indictment to

10  her.  I read and reviewed the indictment with her, answered her

11  questions, and she waives its public reading in court today,

12  and she wishes to enter a plea of not guilty.  She understood

13  the indictment and the charges that are pending against her.

14       THE COURT:  A plea of not guilty will be entered on

15  her behalf.

16       Defendant Jordan Fishman.

17       Mr. Joyce.

18       MR. JOYCE:  Yes, your Honor.  On behalf of Jordan

19  Fishman, I have reviewed the indictment with Mr. Fishman.  We

20  then discussed his not traveling from Massachusetts to court.

21  I created the waiver, sent it to him electronically.  He signed

22  it.  He sent it back to me.  I reviewed with him that it was

23  his signature and the contents of the waiver.  He decided he

24  did not want to come to New York for the arraignment.  I signed

25  the document and then I filed it with the Court.

1          THE COURT:  And that paper is filed at ECF 114.  The

2     order by me accepting it is at ECF 128.  I find, based on

3     counsel's representation, that Mr. Jordan Fishman has knowingly

4     and voluntarily waived his right to be present at the

5     arraignment within the meaning of Rule 10(b) of the Federal

6     Rules of Criminal Procedure.

7          Counsel, has your client seen the indictment,

8     discussed with you the charges against him, specifically Count

9     Two, the drug adulteration and misbranding charge, and do you

10    waive public reading on his behalf?

11         MR. JOYCE:  Yes, your Honor.  He has reviewed it.  We

12    waive a public reading on his behalf.  I enter a plea of not

13    guilty on his behalf.

14         THE COURT:  A plea of not guilty is entered on behalf

15    of Mr. Jordan Fishman.

16         Defendant Rick Dane.

17         MR. SCHOLAR:  I discussed with Mr. Dane his right to

18    be present on March 20.  We discussed the waiver.  I drafted

19    the waiver and sent the waiver to him by e-mail.  We went over

20    the waiver by phone at the same time.  He signed it and

21    electronically forwarded it back to me.  I signed it and filed

22    it with the Court.

23         With respect to the indictment, Mr. Dane has a copy of

24    it.  We reviewed the indictment on March 19, 2020.  I waive a

25    public reading on his behalf, and I would also ask to enter a

1   plea of not guilty on his behalf.

2            THE COURT:  The waiver by Mr. Dane is at ECF 132.  My

3   order accepting it is at ECF 136.

4            I find, based on counsel's representation, that

5   Mr. Dane has knowingly and voluntarily waived his right to be

6   present at today's arraignment, and a plea of not guilty will

7   be entered on his behalf.

8            Defendant Christopher Oakes.

9            MR. FLYNN:  Good afternoon, your Honor.  This is Terry

10  Flynn on behalf of Christopher Oakes.

11           I also prepared the waiver of appearance, explained it

12  in detail and presented it to my client.  He understood the

13  waiver, and I explained to him in detail his right to be

14  present.  He knowingly and willingly gave that up right to

15  appear.

16           Also, in this one, your Honor, you will see the

17  signatures on the waiver are both mine and Mr. Oakes'

18  signature.  He has seen also the indictment and I have

19  explained to him.  I read it to him in detail.  He understands

20  it and he waives the public reading of the indictment.  It is

21  his desire to enter a plea of not guilty to the charges in the

22  indictment against him.

23           THE COURT:  Thank you, counsel.

24           Pursuant to Rule 10(b) of the Federal Rules of

25  Criminal Procedure, based on counsel's representation, I find a

1    knowing and voluntary waiver of defendant's right to be present

2    for his arraignment, and a plea of not guilty has been entered

3    on his behalf.

4           Defendant Jason Servis.

5           MS. GLAVIN:  Yes, your Honor.  I discussed with Mr.

6    Servis his right to be present at the arraignment and discussed

7    the waiver of appearance, which is reflected in docket No. 77.

8    Mr. Servis knowingly and voluntarily waived his right to be

9    present today.  Again, it's reflected in docket 77, which the

10   Court accepted at docket 88.

11          He had received a copy of the indictment.  I reviewed

12   the charge, he is charged with Count Three, with him.  He

13   waives its public reading.  And he pleads not guilty to the

14   count which he is charged in the indictment.

15          THE COURT:  Thank you, Ms. Glavin.  One moment,

16   please.

17          Based on counsel's representations, I do find that Mr.

18   Servis has knowingly and voluntarily waived the right to be

19   present for this arraignment within the meaning of Rule 10(b)

20   of the Federal Rules of Criminal Procedure.  His waiver is

21   filed on the docket at ECF 77.  I believe my order accepting it

22   is at ECF 88.

23          He is charged in Count Three, as Ms. Glavin has stated

24   on the record, which is adulteration and misbranding conspiracy

25   charge, and the plea of not guilty will be entered on his

1   behalf.

2          THE COURT:  Defendant Kristian Rhein.

3          Mr. Scaring.

4          MR. SCARING:  I prepared the waiver.  I sent it to the

5   client.  I discussed it with him.  He understood it and agreed

6   to the terms.  I was not in the office at that time, so I

7   directed him to go to my office and sign it, which he did.  I

8   don't have a copy in front of me, but I believe it was signed

9   by my partner, Susan Carman.  I can reach out to her to confirm

10  that, but I believe that's the way it occurred.

11         However, I did fully discuss it with him and did

12  prepare it, and he signed it in my office.  I discussed the

13  indictment with him.  I gave him a copy.  He read a copy of the

14  indictment.  And it is his intention to waive a reading and

15  enter a plea of not guilty.

16         THE COURT:  It does appear that the waiver is signed

17  by Susan Scaring Carman, who you are telling me is your

18  partner?

19         MR. SCARING:  Yes.

20         THE COURT:  You don't have any reason to doubt that

21  she actually signed that document, do you?

22         MR. SCARING:  No, your Honor.

23         THE COURT:  Based on counsel's representations, I do

24  find a knowing and voluntary waiver by Ms. Rhein of appearance

25  at arraignment, pursuant to Rule 10(b) of the Federal Rules of

1    Criminal Procedure.  Ms. Rhein is charged in Count Three with

2    adulteration and misbranding.  A plea of not guilty is entered

3    on her behalf.

4            MR. SCARING:  On his behalf, your Honor.

5            THE COURT:  On his.  I'm sorry.  Thank you.

6            Mr. Kegley

7            MR. COX:  Judge, thank you.

8            My partner, Mike Mazzoli, drafted the waiver document

9    and e-mailed the letter to Mr. Kegley in Lexington, Kentucky.

10   I discussed with Mr. Kegley over the phone, reviewed it with

11   him, answered any questions that he had.  He fully understood

12   it and favored proceeding in this manner.  He knew he had a

13   right to be present today, and he knowingly waived it.

14           Mr. Kegley signed the document in Lexington and

15   e-mailed it back to us, and I then signed the document after we

16   received it.

17           We also acknowledge receiving a copy of the

18   indictment, your Honor.  We had reviewed that personally in

19   some detail because he came to Louisville.  We waive any formal

20   reading of the indictment and ask you to enter a not-guilty

21   plea to the one count which he appears, which is Count Three,

22   your Honor.

23           THE COURT:  Thank you.

24           Mr. Kegley's waiver appears on the docket at ECF 30.

25   My order accepting it is at 135.

1          I find counsel's representations that that Mr. Kegley

2     has knowingly and voluntarily waived his right to be present at

3     today's arraignment within the meaning of Rule 10(b) of the

4     Federal Rules of Criminal Procedure.  He is, as counsel said,

5     charged in Count Three, drug adulteration and misbranding

6     conspiracy.  Counsel has represented that he reviewed that

7     indictment with Mr. Kegley and that he waives reading on behalf

8     of his client.  A plea of not guilty is entered on behalf of

9     Mr. Kegley.

10          Defendant Alexander Chan.

11          MR. BAUM:  Yes, your Honor.  I prepared the waiver

12    document, and I mailed it to Mr. Chan.  When he received it, we

13    discussed it fully.  I advised him of all his rights.  He

14    signed it.  He sent it back to me signed.  It was signed by

15    counsel and provided to the Court.

16          Mr. Chan is charged in Count Three of the indictment.

17    I actually met with him personally to review Count Three and

18    provided him with a copy of the indictment.  We waive its

19    public reading, and I would enter a plea of not guilty on his

20    behalf.

21          THE COURT:  Thank you very much.

22          On counsel's representations, I find, pursuant to Rule

23    10(b) of the Federal Rules of Criminal Procedure, that Mr. Chan

24    has knowingly and voluntarily waived his right to be present

25    for today's arraignment, and I will enter a plea of not guilty

1    with respect to the count against him, Count Three, drug

2    adulteration and misbranding conspiracy.

3              Has counsel for Mr. Argueta joined us?

4              We will have to make arrangements for him to be

5    arraigned separately.

6              Defendant Surick.

7              MR. DONOHUE:  Good afternoon, your Honor, this is Tim

8    Donohue on behalf of Mr. Surick.

9              THE COURT:  Can I interrupt you.  Before we move on.

10             I will note for the record that Mr. Argueta has filed

11   on the docket a waiver of appearance at today's arraignment and

12   that was accepted by the Court.  That's at ECF 90 and my order

13   accepting that waiver IS at 97.  Each of the waivers filed by

14   the defendants do recite that the defendant has seen a copy of

15   the indictment, that counsel has discussed it or that the

16   client, the defendant, has discussed it with his lawyer, that

17   he enters a plea of not guilty to the charges against him.

18             So  that is part of the record with respect to

19   Mr. Argueta.

20             I'm sorry, counsel.

21             MR. DONOHUE:  I drafted the waiver, your Honor.  I

22   went over the waiver with Mr. Surick at length.  He understood

23   his right to be present today.  He understood those rights.  He

24   waived his appearance.  I can verify that both my signature and

25   his signature are on the waiver that was filed with the Court.

1        THE COURT:  Based on representations that pursuant to

2  Rule 10(b) of the Federal Rules of Criminal Procedure, I find a

3  knowing and voluntary waiver of this defendant, Nick Surick's

4  right to be present for this arraignment.

5        Mr. Surick is charged in Count Four, Five, and Six of

6  the indictment.  That's two counts of drug adulteration and

7  misbranding conspiracy and two counts of obstruction.  I will

8  note for the record his waiver is filed on ECF 112, with my

9  order accepting it at ECF 124.

10        Counsel, with respect to arraignment of your client,

11  has he seen and have you reviewed with him a copy of the

12  indictment?

13        MR. DONOHUE:  I received a copy of the indictment.  I

14  reviewed the indictment with him at length.  We waive a public

15  reading.  We would ask the Court to enter a plea of not guilty

16  to all counts.

17        THE COURT:  Counsel, the question is, has your client

18  seen a copy of the indictment?

19        MR. DONOHUE:  Yes, he has a copy.  We reviewed it

20  together.

21        THE COURT:  Thank you.

22        The Court will enter the plea of not guilty to the

23  charges against Mr. Surick.

24        Defendant Rebecca Linke.

25        MR. WIKSTROM:  Good afternoon, your Honor.

1          I met with Ms. Linke on March 16, discussed the

2    arraignment and her right to be present at it.  The following

3    day I prepared a waiver which recited that she was aware of

4    these rights and willingly waived them and asked the Court to

5    enter a not-guilty plea to Count Four, the one count of the

6    indictment in which she is named.

7          We did discuss the indictment at length and I waive

8    its public reading.  And based on the waiver document, which is

9    at ECF 81, I ask the Court to enter a not-guilty plea on her

10   behalf.

11         THE COURT:  Thank you.

12         Pursuant to Rule 10(b) of the Federal Rules of

13   Criminal Procedure, I find that defendant Rebecca Linke has

14   voluntarily and knowingly waived her right to be present for

15   arraignment.  My order accepting her waiver is at ECF 87.

16         As counsel has recited, Ms. Linke is charged in Count

17   Four of the indictment, drug adulteration and misbranding

18   conspiracy, and counsel has entered a plea of not guilty on her

19   behalf.

20         Defendant Christopher Marino.

21         MR. OKSENHENDLER:  Hello, Judge.

22         I previously discussed with Mr. Marino regarding his

23   right to appear before the Court today, which he knowingly and

24   intelligently and voluntarily waived.  I discussed with him the

25   indictment at the presentment, gave him a copy of the

1   indictment, had him sign the waiver form that I prepared.  I

2   executed it after it was corrected by your Honor.  I would ask

3   if you accept it, and we would enter a not-guilty plea.

4           THE COURT:  Thank you.

5           The waiver is at ECF 127.  I have accepted that waiver

6   now.  My order to do so was at ECF 139.  On that written waiver

7   and counsel's representations, I find that defendant

8   Christopher Marino has, under Rule 10(b), knowingly and

9   voluntarily waived his right to be present for arraignment

10  today.  Counsel has entered a plea of not guilty to Count Four,

11  drug adulteration and misbranding conspiracy charged in the

12  indictment.

13          MR. OKSENHENDLER:  Thank you, your Honor.

14          THE COURT:  Let me just circle back and ask, has

15  counsel for Mr. Argueta joined the call?

16          MS. ONAODOWAN:  Yes, your Honor.  This is Esere

17  Onaodowan for Mr. Argueta.

18          I apologize to your Honor.  My apologies for joining

19  late.  I had a family emergency and was able to now call in.

20  My apologies for wasting the time of my colleagues and also the

21  time of the Court.

22          THE COURT:  Counsel, I appreciate your statement.  I

23  hope all will be well with your family.

24          We are coming to the end of the arraignment portion of

25  our discussion.  There were a lot of preliminaries.  I

discussed with counsel some of the bail conditions.  You can

get a copy of the transcript or confer with your colleagues

about what was already said with regards to that.

Right now I would like to hear from you -- counsel, I

would like everybody to confirm that they have muted their

phones.  And whomever didn't previously mute it may be fully

embarrassed by the conversation that you just put on the

record.

I'm sorry, counsel for Mr. Argueta.  I had gone

through with each of the defendants on the phone or their

counsel asking you to please describe to me how the waiver

executed by your client, which in the case of Mr. Argueta is at

ECF 90, accepted by the Court at ECF 97, the circumstances of

the creation of that document.

Did you explain to your client that he had a right to

be present in court for his arraignment?  Do you believe, based

on that conversation, that the defendant understood the right

and willingly and knowingly gave up that right?

MS. ONAODOWAN:  Yes, your Honor.  I did meet with my

client, Henry Argueta.  In our meeting we discussed at length

his right to appear in court for his arraignment.  I explained

what a waiver of his presence would mean.  My client is aware

of the rights that he is waiving, and he did indicate that he

was willing to waive those rights.

I then drafted the waiver pursuant to the meeting that

1    I had with my client, and I submitted that waiver to your

2    Honor.  I did sign and my client did sign the waiver.  I also

3    signed the waiver as well.

4            THE COURT:  Thank you.

5            The Court does find, based upon the waiver at ECF 90,

6    which was accepted by the Court at ECF 97, and counsel's

7    representations that Mr. Argueta has knowingly and voluntarily

8    waived his right to be present for arraignment today.

9            Counsel, I would ask you the following questions.  Has

10   your client seen a copy of the indictment?  Did you discuss it

11   with your client?  Do you, on his behalf, waive its public

12   reading?  And how does your client plead to the charge in Count

13   Three, drug adulteration and misbranding, with which he is

14   charged?

15           MS. ONAODOWAN:  Your Honor, my client has seen a copy

16   of the indictment.  I gave it to him at the presentment.  We

17   discussed the indictment.  We also discussed Count Three, which

18   is what he was charged with.  My client at this point enters a

19   plea of not guilty, and we waive a further reading.

20           THE COURT:  Thank you very much.

21           That concludes the arraignment of all 19 of the

22   defendants in this case.  Let's briefly come to a conference

23   and talk about the case generally and the conduct of this case.

24           Why don't we begin, I'll hear from the government

25   generally about the background of the case.  Keeping in mind I

1   have read the indictment, I don't need a great deal of detail.

2          MR. ADAMS:  Without going through the details because

3   of the length of the indictment, this is a case that began with

4   an FBI investigation several years ago at this point and has

5   focused generally on doping and the use of

6   performance-enhancing drugs to win professional horse racing,

7   both in the thoroughbred and standard bred world.  And across

8   the industry, as your Honor can tell from the indictment --

9          THE COURT:  Counsel, please, everyone except for

10  Mr. Adams right now should have their phone on mute.

11         Go ahead, Mr. Adams.  I'm sorry.

12         MR. ADAMS:  I apologize in advance.  There will be a

13  baby screaming in just a minute.  That is not anybody else.

14         THE COURT:  That is your baby?

15         MR. ADAMS:  That will be mine.

16         The investigation has involved a number of different

17  forms of information collection over the span of the case.

18  Those have included in-person meetings and covertly recorded

19  meetings by confidential sources.  It has included, as the

20  indictment recites, and as some of the letters before this

21  conference recite, a number of wiretaps over a series of phones

22  and that, in total, span approximately one year's worth of

23  time.

24         At any given point during that year there were

25  generally between, I would say on average, three and four

1  phones being intercepted at once.  Certain phones were picked

2  up early in the case, dropped, and then spun off onto other

3  defendants' phones.  And when it comes to discovery, that is

4  going to comprise, by far, the bulk of the data in discovery.

5          In addition to the recordings and the defendants' own

6  words on those in-person and wiretap recordings, there have

7  been a number of other investigative techniques used.  There

8  have been a number of surreptitious search warrants conducted:

9  Two on the physical premises, one on the premises of

10  Mr. Servis, another at a barn and what the government will

11  describe as a small pharmacy controlled by Mr. Oakes.  And then

12  a handful of surreptitious warrants and searches of cellular

13  telephones of defendants and others coming across the U.S.

14  border at airports, generally.

15          There are bank records and other proofs of grand jury

16  investigations and at this point, in light of the arrest, there

17  are also a number of electronic devices that have been seized

18  both from Mr. Fishman back in October, as his letter lays out

19  this morning, as well as roughly 17 of the defendants in this

20  case, at least one electronic device seized from 17 of the

21  defendants in this case.  And for some those were personal cell

22  phone seizures as well as electronic devices in the form of

23  computers, hard drives, thumb drives from those arrests and a

24  number of search warrants executed on the day of most of the

25  arrests, on March 9 of this year.

1           The investigation, I'll note, also continued.  As part

2      of what I will describe in terms of discovery, there are still

3      documents and records coming into the government from various

4      parties, people who have received processing form of subpoenas

5      or search warrants that are still coming in to us today.  Of

6      course, there is quite a few electronic devices still within

7      the FBI's control for which warrants have been obtained, and

8      now the execution of the warrants is underway and the imaging

9      and pertinency reviews for each of those devices is underway

10     but will pointedly take some time under the present

11     circumstances.

12          If the Court has any other questions about the

13     background of the case, I'm happy to address it now.

14     Otherwise, I have some thoughts and proposals in terms of

15     timing and I'll pause here.

16          THE COURT:  Let's hold off on the timing for a moment.

17     Let me just ask you kind of one other status update question.

18     What's the status of the speedy trial clock?

19          MR. ADAMS:  Your Honor, speedy trial time was excluded

20     originally by Judge Wang on the 9th through what was the

21     original date for the conference of March 23.  At the time that

22     we pushed that back, the Court also excluded time *sine die*

23     originally and subsequently through today's date.  So it's our

24     understanding that with respect to all of the defendants, time

25     has been excluded from the day of presentment, March 9.

1          THE COURT:  Let me pause here.  One other background

2    question for the government.  You stated to me that the

3    investigation is still continuing.  Is the government

4    anticipating filing any superseding indictment, adding any

5    defendants, any additional charges?

6          MR. ADAMS:  Your Honor, this is something that we are

7    certainly considering in large part that will turn on two

8    things.  One, the content of the documents and continued

9    investigation going forward, which is certainly continuing at

10   full steam.

11         I'll note, just for the Court's awareness, there are

12   two individuals charged by complaint in the immediate aftermath

13   of the original arrest, both of whom remain on complaint,

14   neither of whom are indicted currently.  And my current view is

15   they are likely not to be indicted in this case, but likely to

16   be superseded into one of the other cases, the case before

17   Judge Castel that I cited:  One, so that the Court is aware, we

18   don't expect that those three defendants will be joining this

19   set of defendants; and, two, just an example of how the

20   investigation is in fact continuing to unfold.

21         The second thing, obviously, that will drive whether

22   or not we are superseding charges, as opposed to defendants, is

23   the prospect of dispositions early and whether or not

24   essentially cases are wrapped up before we come to a point of

25   deciding, let's supersede if it's appropriate.

1          THE COURT:  Let me pause there and ask, does any

2     defendant have anything they wish to say with respect to what

3     the government has put on the record?

4          MR. BAUM:  Your Honor, in anticipation of your Honor

5     asking questions about potential scheduling, I know your Honor

6     did not go into that with the government, all of the defense

7     attorneys have conferred, and we were concerned, as you

8     expressed earlier concerns, about 20 or more attorneys in a

9     telephone conversation talking one after the other and possibly

10    repetitive conversation, and certainly it might not be the most

11    effective and efficient way to convey our thoughts.  All of the

12    defense attorneys conferred and they asked me to speak on their

13    behalf.

14          THE COURT:  Can we hold on for a moment about that.

15          MR. BARKET:  Your Honor, I don't have a problem with

16    the gentleman speaking, but he is not speaking on behalf of

17    Mr. Cohen.

18          THE COURT:  Counsel, thank you.  We are going to hold

19    on for a minute about scheduling and all of that.

20          I simply asked, does anybody on the defense side wish

21    to comment on or add anything to or disagree with anything that

22    was put on the record by Mr. Adams either with respect to the

23    nature of the case or the status of the speedy trial clock?  I

24    guess you won't have anything you can tell me about whether the

25    government will be filing any additional charges or adding

1   additional defendants.

2          Let me ask one more question to the government.  I

3   assume there are not any victims entitled to notice under the

4   Crime Victims' Right Act in this case.

5          MR. ADAMS:  Your Honor, there are not.  There are

6   certainly affected jurisdictions.  For example, the racing

7   commissions of New Jersey, Florida, New York, Delaware, and

8   elsewhere.  And all of them are aware of the case generally and

9   these proceedings.

10          THE COURT:  Any defendant wish to be heard on that

11   point?

12          Let me hear from the government about the status of

13   discovery.  Mr. Adams has outlined for us the types of evidence

14   he expects to be producing.  I would like to hear more about

15   the status of discovery.  I signed a protective order in this

16   case, at the government's request, after asking whether there

17   were any objections.  No objections were filed.

18          I was advised that there were no objections to that

19   order by defendants and that the government had run that by

20   everybody and in fact made some revisions based on input it

21   received.  I entered that protective order on March 25 and that

22   is on the docket.  I assume that since that date, certainly,

23   there is no reason why things could not be produced to defense

24   counsel.

25          I don't know who wants to be heard from the government

1    with regard to the status of discovery.

2            MR. ADAMS:  We appreciate the protective order being

3    in place.  It certainly put us in good stead for moving

4    discovery out generally.  Even prior to the protective order

5    being signed, the government was providing, when requested,

6    certain defendants and many of them did request particular

7    kinds of discovery to orient people and give them at least an

8    introduction into what the case would look like.

9            Principally, those included Title III draft line

10   sheets for particular defendants, affidavits for wiretap

11   applications or search warrants that acted as what I'll say is

12   sort of the roadmap to the case for those particular people.

13           That's been already rolling out.

14           We expect that today there will be a link available on

15   a platform called USAFX, which is an electronic platform for

16   producing discovery and that we will get that out to counsel

17   generally today.  That is going to include a substantial

18   document production and, again, that's going to be focused in

19   the initial instance on Title III line sheets for the charged

20   defendants' phones.  It will focus on affidavits for those line

21   sheets, as well as affidavit of various kinds.  For example,

22   the physical proceeds warrant, the electronic device warrant, a

23   handful of e-mails and other kinds of 2703 warrants and, at

24   least for a handful of defendants, GO location warrants; for

25   example, GPS data from cellular telephones.

1          We are also going to be prioritizing both agent

2     reports, written reports and eventually, although perhaps not

3     today, the audio of postarrest statements for any defendants

4     who may have made one.

5          THE COURT:  Are there?

6          MR. ADAMS:  I'm sorry, your Honor?

7          THE COURT:  Are there such postarrest statements?

8          MR. ADAMS:  For a number of defendants there are

9     postarrest statements.  I believe that we have spoken with

10    counsel, where applicable, to let them know that exists.  And,

11    in any event, we plan to make the reports, if they exist,

12    available in early stages of production, including this week.

13         THE COURT:  Those were reported, right?

14         MR. ADAMS:  Most, if not all of the statements, to the

15    extent that there was a substantive postarrest interview, as

16    opposed to a declination of an interview, should be video

17    recorded.  And where we have a video recording we will provide

18    it.  If it was audio recorded, we will provide that as well.

19    And the agent's memoranda, the FBI 302 reports will come as

20    well.

21         The idea of the early sets of production is to

22    prioritize.  One, items and documents that, again, provide a

23    good roadmap for the case generally.  Things like the

24    affidavits, Title III, and the search warrants will make

25    reference to various other kinds of evidence that will be

KGNSAV2

1    forthcoming, so they are good to have up front.

2          And, two, to give counsel the kinds of evidence that

3    we think is most likely to form the basis for suppression

4    motions, if any, are going to be filed.

5          I'll pause before I turn to the next stage of the

6    discovery.

7          THE COURT:  Counsel, when do you expect you are going

8    to substantially complete this first phase and how many phases

9    are you contemplating?

10          MR. ADAMS:  The first phase we will complete this

11    week, meaning the documents that I just described.  I'll call

12    phase 2 will include other kinds of business records, paper

13    documents that we have in hand already and scanned, as well as

14    audio files for the Title III intercepts and for consensual

15    recordings.  Those documents or, rather, the audio files are

16    going to be voluminous.

17          Those are things that we probably cannot post to the

18    online platform that I have described.  We have already been in

19    contact with defense counsel about the need for hard drives to

20    provide the audio as well as some of the electronic evidence.

21    We have had conversations about volume on that front.

22          To begin with, I think that we have been talking about

23    500-gigabyte hard drives.  Like the electronic devices that got

24    picked up at the time of arrest, that volume may well grow.

25    And as we learn about the volume from those devices, we can

1    keep both defense counsel and the Court apprised of whether the

2    volume substantially rose.  If we end up talking about multiple

3    terabytes, we will certainly be alerting everybody.

4         That phase, meaning the electronic documents we have,

5    as well as the audio for the Title III, assuming that we have

6    the hard drives in hand for -- I know there has been an

7    application.  There may be some discussion about a discovery

8    coordinator.  One or the other.  Those are things that we

9    expect will probably take another month to upload and return,

10   in large part because we have staffing issues at the U.S.

11   Attorney's Office, in particular with respect to our IT and

12   paralegal team.

13        If we call that the end of phase 2, then phase 3 is a

14   more time-consuming phase and that is the extraction of

15   electronic documents and electronic records from the devices I

16   described earlier and the FBI's review of those devices

17   pursuant to any warrant that applies to the device.

18   Realistically, I think that it will take -- in these

19   circumstances are going to continue for a while.  I think six

20   months to complete that.  And I recognize that's a lengthy

21   period of time, but in light of the volume and the manpower

22   constraints, I think that is a realistic estimate.

23        THE COURT:  Let me ask you to pause there.  I first

24   want to ask, I think it was Mr. Oksenhendler who submitted a

25   letter to me proposing that I appoint Emma Greenwood as a

 1    discovery coordinator.

 2            MR. OKSENHENDLER:  That's correct, Judge.

 3            THE COURT:  There is a notation on the docket that

 4    advising that, as a general matter, I know Ms. Greenwood has

 5    been appointed in numerous cases in this district and elsewhere

 6    and it sounds like probably it's a good idea in this case and

 7    would help facilitate things.  I asked that you talk to the

 8    rest of the defendants and the government, find out if there

 9    were any objections.  Submit to me a proposed order.  I have

10    gotten nothing.

11            MR. OKSENHENDLER:  Yes, Judge.  We had a

12    teleconference yesterday among the defense counsel to discuss

13    this.  I think Mr. Baum is going to speak on this matter, we

14    agreed that he would, to discuss the consensus of the defense

15    counsel.

16            I also arranged, if you'd like to speak to

17    Ms. Greenwood, she is awaiting my text and is available to call

18    in if your Honor so desires.

19            THE COURT:  I don't need to speak to Ms. Greenwood.

20    As I said, I'm well aware of what she does and the fact that

21    she has been appointed in numerous cases in this district, and

22    I had asked that an order be submitted after consultation with

23    the rest of counsel in the case in order to try to move things

24    along, and I had not received it.  That order needs to address

25    what her responsibilities will be, which is fairly standard and

1   kind of a bullet point format saying her responsibilities will

2   include.

3            I asked that there be a discussion about how she is

4   going to be compensated.  I understand where she works and that

5   the office of the court generally takes care of that.  But that

6   needs to be memorialized in an order.  And given that we do not

7   have defendants on the phone and I cannot basically allocute

8   each of them to make sure they understand, there needs to be a

9   recitation in that order that Ms. Greenwood is not counsel.

10   While she is an attorney, she is just a discovery coordinator.

11   She is not acting as counsel to any defendant or to the

12   defendant group collectively, that you each have discussed that

13   with your clients and that they understand that and recognize

14   that no attorney-client privilege will be created with her.

15            MR. OKSENHENDLER:  I have such paperwork together.  I

16   think there were some issues.  And, again, Mr. Baum, I'm happy

17   to give the floor to him to discuss with the Court the

18   consensus that we came to.  If everyone is in agreement, I can

19   submit all of the paperwork you just described in short order.

20            THE COURT:  Why don't we have Mr. Baum report to me on

21   where you're at with this.

22            MR. BAUM:  Thank you, Judge.  I think Guy can probably

23   give you more detail than I can.  But pursuant to your order we

24   did confer.  I can't say that we had every counsel on the

25   conference call.  The most recent conference all among defense

1   was just yesterday.  The reason you didn't get the order is

2   because we did not have the opportunity to speak to all of the

3   defense counsel which are on the phone today.  But the

4   consensus is that we would endorse Emma Greenwood as a

5   discovery coordinator.  And, as you just heard, that is

6   assuming that we can have consensus among other defense

7   attorneys we can provide the Court with the proposed order very

8   soon.

9           THE COURT:  Anybody else wish to be heard on this

10  subject?

11          Is there any objection to the request that there be a

12  discovery coordinator appointed?

13          MR. FELDMAN:  Your Honor, there is no objection as to

14  a discovery coordinator being appointed.  I would, however,

15  submit to the Court that Dr. Fishman will not join in in the

16  request to have this particular person be discovery

17  coordinator.  We are just going to do it in house and absorb

18  the costs.

19          THE COURT:  That's fine.  But you have no objection to

20  the other defendants requesting that a coordinator be

21  appointed, do you?

22          MR. FELDMAN:  Absolutely not.

23          THE COURT:  Does the government have any objection to

24  the request?

25          MR. ADAMS:  No, your Honor.

1          THE COURT:  Any other defendant wish to be heard?  The

2     subject being appointment of a discovery coordinator and

3     specifically Ms. Greenwood.

4          As I had previously noted in the order I entered on

5     the docket, the Court embraces the concept of Ms. Greenwood

6     acting as a discovery coordinator in this case and will sign an

7     appropriate order.

8          Counsel to the defendants, I don't care if it's

9     Mr. Baum or if it's Mr. Oksenhendler or who it is, but somebody

10     ought to put together or find from another case -- I have

11     multiple examples myself of cases and orders in which

12     Ms. Greenwood has been appointed as a discovery coordinator.

13          Excuse me.  Put pen to paper.  Prepare an order.

14     Circulate it by e-mail to all defense counsel and get comments

15     and then give me a proposed order so we can move things along

16     here.

17          MR. OKSENHENDLER:  I will do that, Judge.

18          THE COURT:  Thank you, sir.

19          You have heard all from the government about what it's

20     proposing in terms of discovery and a time frame.  Why don't I

21     hear from the rest of the parties.

22          I will tell you this, that what I plan to do in this

23     case, after we finish talking about the time frame for

24     discovery and how it's going to be rolled out, it's obviously

25     happening on a rolling basis, but I intend to allow a

1   reasonable period of time for discovery to be produced and for

2   the defendants thereafter to review that discovery in order to

3   figure out what motions they contemplate or might think are

4   appropriate and then for us to reconvene at some point for a

5   further conference at which I plan to set the schedule for

6   motions and a trial date.

7          I will hear from anybody on the defense side who

8   wishes to address that issue of, A, discovery in general and,

9   B, scheduling.

10          MR. BAUM:  Yes, your Honor.

11          Judge, our suggestion was going to be just what you

12   articulated.  We think that would be the most efficient and

13   effective way to move forward, certainly waiting until

14   discovery is completed.  As you heard from the government,

15   discovery is voluminous.  We all would like an opportunity to

16   receive it.  We are going to receive it on a rolling basis.  We

17   are going to review it as expeditiously as possible.  But there

18   is agreement that it should take reasonably, as Mr. Adams said,

19   six months and that on a rolling basis we won't get discovery,

20   I'll assume, until close to the end of that six-month period.

21   There is a variable there, which involves the FBI lacks ability

22   to do the work that needs to be done, which is to get into the

23   electronic devices, download them, review them, and then

24   provide them to counsel.  That's a variable that could push it

25   past six months.

1     Our suggestion to the Court would be just as you

2 articulated, Judge.  We would like to get discovery completed.

3 We would then be prepared to have a conference at which we can

4 discuss a motion schedule at that time.

5     Judge, I just want to point out, Mr. Adams outlined

6 some of the discovery, and he did a wonderful job doing that.

7 He mentioned it was voluminous.  Just by way of example, the

8 wiretaps alone were over a period of one year, involve seven

9 defendants.  And based on some of the line sheets we have seen,

10 we are probably looking at reviewing tens of thousands of

11 conversations.

12     The discovery itself may take six months, and we are

13 hopeful that we will have a reasonable opportunity to review

14 all the discovery.  Obviously, once the government completes

15 their discovery, we may not have been in a position yet to

16 review everything that was provided to us, and we would just

17 like the Court to take that into consideration moving forward.

18     THE COURT:  I understand that.  But, obviously, if the

19 government is producing things on a rolling basis, I expect

20 it's going to be reviewed on a rolling basis as well.  You are

21 not going to wait six months until you have everything in hand

22 and then first start reviewing.

23     MR. BAUM:  That's absolutely accurate, your Honor.

24 That is a fact.  Our concern, as the government articulated,

25 with sort of the stages is that we may not get things until say

the six months and what we probably will get last is these

electronic reviews by the FBI, which are very time consuming

for us to review.  Some of it has to be reviewed with experts.

All I'm saying is, yes, absolutely.  We will review

everything we are provided expeditiously as we receive them.

But if we don't receive things until the end of the six months,

it will be a time period following that which we view would be

necessary.  I just want you to consider that.  It may not

happen.  We may receive everything in four months and be able

to report back within that six-month period, but I am just

outlining that for you as a possible glitch for everyone to say

we have reviewed everything at the end of that six-month

period.

THE COURT:  Counsel, I hear what you are saying.  And

you've endorsed, which I appreciate, my plan that we will have

a further conference and at that conference we will set a

schedule for motions and a trial date.  But you haven't talked

to me about what kind of a time frame the defendants on whose

behalf you are speaking contemplate, and I recognize you do not

speak on behalf of all defendants.

MR. BAUM:  That's correct, Judge.  Our feeling, Judge,

was that perhaps a conference in eight months, two months after

the discovery is completed, at which time we will hopefully

have completed a total review of everything that's been

provided.

1        Or, if your Honor wishes, we can have a status

2   conference before that to determine whether discovery has been

3   provided, how much more needs to be provided and how long it

4   took.  So at that point we can set further conference date.  We

5   leave that up to the Court.  We totally endorse your

6   suggestion, though, in principle, that we should have an

7   opportunity to review all the discovery before we talk to the

8   Court about motions.

9        Just in terms of motions, Judge, I would like to put

10   forward to you what kinds of motions we are already

11   contemplating based on Mr. Adams articulation of the evidence.

12   And the motions could be extremely lengthy, complex, and

13   expansive.  We are talking about motions addressing the

14   wiretaps, the search warrants, the statements, seizure of

15   physical evidence.  There may be motions attacking the

16   government's intended scientific evidence, which could lead to

17   *Daubert* hearings, which could be extensive and involve many

18   experts and that in itself could take months of preparation.

19   We are not asking now for a motion schedule.  We are just

20   alerting the Court to the kinds of motions that we would be

21   talking about when discovery is completed.

22        THE COURT:  Thank you.

23        Does anybody else wish to be heard?  Mr. Barket.

24        MR. BARKET:  No, Judge.  Thank you.  I just wanted to

25   make the point that, I forgot who it was, but he wasn't

1   speaking for everyone.  We have our own discovery schedule and

2   coordinator that we will use internally.

3           THE COURT:  Will you talk to me about the schedule

4   you're contemplating.

5           MR. BARKET:  I'm happy with what they suggested.  I

6   meant a schedule for reviewing the discovery as it comes in and

7   any motions that we think are appropriate.  We are not just

8   participating in the Emma Greenwood coordination process.

9           THE COURT:  Someone else wish to be heard?

10          MR. SCARING:  Yes, your Honor.  The only issue that I

11  think could be problematic would be setting a trial date at the

12  first conference.  Obviously, there is going to have to be more

13  than one trial date.  We are going to have some kind of a split

14  up, given the number of defendants.

15          THE COURT:  Counsel, we will deal with that when we

16  get to the appropriate point in time.  I'm not talking now

17  about anything relating to severance.  It's too premature.

18          MR. SCARRING:  My suggestion would be we have at least

19  two conferences before we actually schedule a conference date

20  moving forward.  Because of what's going on with the virus, a

21  lot of trials that many lawyers have scheduled are going to be

22  adjourned, pushed back.  And so what I'm concerned about is, it

23  would be difficult to tie up a period of time for trial when we

24  don't really know or may not know which group, for instance,

25  one lawyer would be involved in.

1          In other words, if it's going to be broken up, they

2     are going to have to be separate trial dates, and I wouldn't

3     want to tie up separate trial dates for each lawyer.

4          So what I'm hoping is that at some point, and I don't

5     think we are going to be in that position to do it at the first

6     conference, at some point going forward the government may wish

7     to suggest the grouping of trials that are going to go forward.

8     Also, there may be defendants who enter pleas.

9          And then we might be in a better position, after a

10    second conference, for instance, to realistically schedule

11    dates for particular lawyers and not tie everybody else up for

12    those dates.  I just ask your Honor to keep that in mind going

13    forward.  I know it's too early to make those decisions now,

14    but I would ask your Honor to keep that in mind.  Thank you.

15          THE COURT:  Thank you.

16          Anybody else wish to be heard on the defense side?

17          MR. FELDMAN:  Yes, your Honor.

18          With respect to the discovery, I don't have any major

19    issue with what Mr. Adams represented about the timing and the

20    progression of discovery.  I understand the labor and the

21    manhours that's going to go into doing all this with respect to

22    all of the electronic devices.  And your Honor has the letter

23    that I submitted to the Court this morning with respect to my

24    client individually.

25          However, I would note, and presumably this applies to

1    all the clients in this case, that regardless of the labor and

2    man time and all the other things that go into this, the

3    government still has *Brady* and *Giglio* obligations, and there

4    are a number of confidential informants in this case, known

5    confidential informants in this case.

6              THE COURT:  Sounds like a bit of an oxymoron to me.

7              MR. FELDMAN:  There are known confidential informants

8    in the sense that the government knows who they are.  And so

9    that information and any impeachment information that would

10   fall either under *Giglio* or *Brady* should be produced to defense

11   counsel as soon as practicable.  That's all I would note.

12             THE COURT:  Counsel, thank you.  I hear what you are

13   saying.

14             I assume the government knows and understands its

15   obligations under *Brady* and *Giglio*.  Correct, Mr. Adams?

16             MR. ADAMS:  That is correct, your Honor.

17             THE COURT:  And will be producing materials as you

18   were obligated to do, correct?

19             MR. ADAMS:  That is correct.

20             THE COURT:  Does anybody else on the defense side wish

21   to be heard on what has been said with respect to scheduling?

22             I have to say, counsel, after hearing what both

23   Mr. Adams had to say and listening to defense counsel, it does

24   seem to me that it might be a good idea for us to contemplate

25   not one conference, but two before we actually have enough

information and enough of a sense of how the case is going to

unfold for us to set a firm trial date.

        The question that I have for -- I'll address it first

to Mr. Adams and then to the rest of you is, you say six months

for you to produce discovery.  And then I think it's not

unreasonable, at least before I set any kind of a schedule for

motion practice, to allow the defendants time to review six

months worth of materials, even if they are produced on a

rolling basis.  It looks like for that conference we are

talking about some time in the fall.

        But in the interim, I think there is some sense to

having an interim conference at some point just for updates on

where we are at with respect to discovery and any issues or

problems that need to be addressed, and I would entertain

suggestions on what makes sense in terms of reconvening.

        MR. ADAMS:  Your Honor, that suggestion is welcomed by

the government.  If a conference date three months out makes

sense to others as a status update, then the government will be

more than happy to appear for that, and we will have an update

on the status of discovery productions and any issues.

        THE COURT:  Does any defendant object to that, doing a

further conference some time roughly three months out and then

at that conference setting a more definitive schedule for the

remainder of the case?

        MR. BAUM:  When you say setting a more definitive

1   schedule, you are not talking about at that conference, before

2   discovery is complete, you are not talking about setting a

3   motion schedule.  You are just articulating the hope that we

4   can figure out when the discovery will be completed and the

5   time we need for review of that discovery.

6          THE COURT:  Correct.  It sounds like we are talking

7   about sometime in the fall for a conference at which a motion

8   schedule and a trial date will be set.  That will happen in the

9   fall, I'm suggesting.

10          Hearing nothing from anybody, why don't I propose to

11   counsel that June 29 or 30 would work for the Court.  I also

12   have availability in early July -- obviously, we should avoid

13   the days surrounding the 4th of July -- that we could

14   reconvene.  Is there any objection by anybody to doing this on

15   June 30, further conference?

16          MR. GOLDMAN:  Judge, I need a second to check my

17   calendar and some other attachments.

18          THE COURT:  Why don't you all take a moment because I

19   don't want really want to get a barrage of letters after we set

20   it down.

21          MR. COX:  Your Honor, is it your intent to do this

22   telephonically or in person?

23          THE COURT:  It's very hard for me to know.  Assuming

24   or hoping that the COVID situation is better, I would hope to

25   do it in person.

1          MR. COX:  Yes, ma'am.

2          THE COURT:  I cannot predict.  It would be my hope

3   that we could convene in person.  As you all see, things take a

4   lot longer and it is a lot more tedious when you have to do

5   them by phone.

6          Any objection to June 30?

7          MS. LEISENRING:  What date did you say, your Honor?

8          THE COURT:  Tuesday, June 30.

9          MR. ROLLOCK:  What time were you thinking, your Honor.

10          THE COURT:  I have not gotten that far, but I am

11   thinking in the morning, though.

12          Do we have any counsel who come from out of town?

13          Would doing an 11:00 start time facilitate things for

14   people?

15          MR. GOLDMAN:  It does, your Honor.

16          THE COURT:  June 30 at 11 a.m. we will convene for a

17   conference.  I'll get an order on the docket to that effect or

18   it will be reflected in the minute order from today's

19   proceeding.

20          A couple of final points.  In advance of that

21   conference on June 30, I would ask that all defense counsel

22   please confer with your clients.  In particular, if the COVID

23   emergency continues and we have to convene by telephone, please

24   talk to your clients about whether they waive whatever rights

25   they may or may not have to be present at future conferences in

this case, in light of the COVID emergency in particular or

otherwise.  And if they are waiving their rights, you can put

something on the docket to that effect or you need to be

prepared to confirm that, in any event, at the conference

itself.  I think it would be cleaner if people would put a

waiver document -- file them on ECF in advance of the June 30

conference if your clients are waiving their right to be

present.

        The only other thing I want to say, we don't really

have any clients on the phone except for Mr. Cohen and

Mr. Navarro.  So I will say to the two of them and I ask

everybody else to please make sure their clients understand

that if there are any thoughts about changing counsel, if

circumstances arise, if you have retained counsel but you are

eligible for or need to have counsel appointed, or, conversely,

if you have appointed counsel but want to retain counsel, or,

for any other reason there are going to be changes in counsel,

doing it sooner rather than later is better.

        You heard about the volume of discovery in this case.

The lawyers need time to review and become familiar with that

to adequately represent the defendants and be prepared for

proceedings in the case and ultimately for the trial.

        If you wait until the last minute to seek change of

counsel, I may not grant applications.  I am certainly not

going to look kindly on any request to extend trial dates or

1    other deadlines in the case because of changes of counsel.

2              Is that understood, Mr. Navarro?

3              DEFENDANT NAVARRO:  Yes, your Honor.

4              THE COURT:  Mr. Cohen.

5              DEFENDANT COHEN:  Yes, your Honor.

6              THE COURT:  I would that ask counsel on the phone

7    without clients to please take that message back or please make

8    sure that your clients understand that.

9              Does the government seek further exclusion of time

10   under the Speedy Trial Act?

11             MR. ADAMS:  We do, your Honor.  In order to allow for

12   us to collect and produce voluminous discovery and for defense

13   counsel to accept, review it, and begin contemplating motions

14   that may lie as a result of the investigation of discovery.

15             THE COURT:  Until?

16             MR. ADAMS:  Until June 30, 2020.

17             THE COURT:  Does any defendant wish to be heard?

18             I am going to go through the list of defendants and

19   ask if there is consent to the government's request that I

20   exclude all time from today until June 30.

21             Counsel to Mr. Navarro or Mr. Navarro himself.

22             MR. KREISS:  No objection.

23             THE COURT:  Counsel to Ms. Garcia.

24             MS. COLSON:  No objection.

25             THE COURT:  Mr. Zulueta.

1              MR. GOLDMAN:  No objection.

2              THE COURT:  Mr. Tannuzzo.

3              MR. ROLLOCK:  No objection.

4              THE COURT:  Mr. Cohen or his counsel.

5              MS. LEISENRING:  No objection.

6              THE COURT:  Counsel to Mr. Seth Fishman.

7              MR. FELDMAN:  No objection, your Honor.

8              THE COURT:  Counsel to Ms. Gianelli.

9              MR. FASULO:  No objection, your Honor.

10             THE COURT:  Counsel to Jordan Fishman.

11             MR. JOYCE:  No objection.

12             THE COURT:  Counsel to Rick Dane.

13             MR. SCHOLAR:  No objection.

14             THE COURT:  Counsel to Mr. Oakes.

15             MR. FLYNN:  No objection.

16             THE COURT:  Counsel to Mr. Servis.

17             MS. GLAVIN:  No objection.

18             THE COURT:  Counsel to Kristian Rhein.

19             MR. SCARING:  No objection.

20             THE COURT:  Counsel for Michael Kegley.

21             MR. COX:  No objection.

22             THE COURT:  Counsel to Mr. Chan.

23             MR. BAUM:  No objection.

24             THE COURT:  Counsel for Mr. Argueta.

25             MS. ONAODOWAN:  No objection.

1          THE COURT:  Counsel to Mr. Surick.

2          MR. DONOHUE:  No objection.

3          THE COURT:  Counsel to Ms. Linke.

4          MR. WIKSTROM:  No objection.

5          THE COURT:  Counsel to Mr. Marino.

6          MR. OKSENHENDLER:  No objection.

7          THE COURT:  I will.

8          MS. KIRSHNER:  Your Honor, Gregory Skelton, I think

9    you skipped over him.  We have no objection.

10         THE COURT:  Thank you very much.  I apologize,

11   counsel, for skipping Dr. Skelton.

12         I will enter an order excluding time from today until

13   June 30, all previous time having already been excluded.  I do

14   find that the ends of justice served by excluding such tome

15   outweigh the interests of the public and of the defendants in a

16   speedy trial.

17         In particular, as this record makes clear, this is a

18   complex, multidefendant, 19 to be specific, case.  Discovery,

19   as is reflected on the record that we have just talked about at

20   some length, is voluminous, detailed electronic evidence.

21   There is a need for time for production of that discovery and

22   the work that needs to be done in order to get that discovery

23   made.  There needs to be time for defendants to consider that

24   discovery and analyze it and prepare or think about what

25   motions may or may not be appropriate in this case.  And I also

1    would like to allow time for the parties who may wish to do so

2    to engage in any discussions about disposition of the case.

3           In addition, for the record, the ongoing COVID-19

4    pandemic obviously has and will continue to hamper the ability

5    of counsel to accomplish before going as expeditiously as might

6    otherwise be the case, and the ability of defense counsel to

7    consult and coordinate with one another and with their clients,

8    the defendants in this case.

9           Is there anything else from anybody for the record?

10          MR. ADAMS:  Nothing here.  Thank you.

11          THE COURT:  Anything from any counsel for the

12   defendants?

13          Before we conclude, I would ask that counsel obtain a

14   copy of the transcript and put it on file on the docket through

15   ECF once it is available.  I would also ask each of the

16   defendants who participated on this call, Mr. Navarro first,

17   then Mr. Cohen.

18          Mr. Navarro, were you able to hear everything that was

19   said in these proceedings and do you have any questions for me?

20          DEFENDANT NAVARRO:  Yes, your Honor, I heard

21   everything.  No questions, your Honor.

22          THE COURT:  Mr. Cohen.

23          DEFENDANT COHEN:  Yes, your Honor, I understood

24   everything and no questions.

25          THE COURT:  Thank you.

1          Counsel for the defendants who were not on the call,

2     so that's the other 17 defendants, I would instruct you to,

3     please, within the next 24 hours, confer with your client,

4     describe to them what happened to at today's proceeding.  Let

5     them know the schedule that we talked about and, in particular,

6     that we have a further conference on June 30.  Discuss with

7     them the waiver that I asked you to put on the docket if they

8     choose not to participate in the conference on the 30th.

9          If there are any issues either communicating with your

10    client or about the schedule that was set, I would ask you to

11    please let me know immediately.  If I don't hear from anybody I

12    will understand then that all defendants have been advised of

13    what occurred today and that there are no objections to what we

14    have agreed or to what I have ordered.  As I say, please obtain

15    a copy of the transcript and, counsel, I would ask that you

16    please provide that transcript to your clients when it is

17    available.

18          Is there anything else?

19          I thank you all for your patience.  I know it's been

20    tedious to have to conduct things this way.

21          I hope that everybody will be safe and stay healthy.

22    Be well.  And we are adjourned.

23          (Adjourned)

24

25