KB4CmarP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4            v.                    20 CR 160 (MKV)
                                   Telephone Conference
5    CHRISTOPHER MARINO,

6            Defendant.

7    ------------------------------x

8                                  New York, N.Y.
                                   November 4, 2020
9                                  3:30 p.m.

10   Before:

11                        HON. MARY KAY VYSKOCIL,

12                        District Judge

13                             APPEARANCES

14
     AUDREY STRAUSS,
15       Acting United States Attorney for the
         Southern District of New York
16   BY:  SARAH MORTAZAVI
         Assistant United States Attorney
17
     LAW OFFICES OF GUY OKSENHENDLER
18       Attorney for Defendant
     BY:  GUY OKSENHENDLER
19

20

21

22

23

24

25

                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

1          (The Court and all parties appearing telephonically)

2          THE COURT:    Good afternoon.  This is Judge Vyskocil.

3    Ms. Dempsey, would you call the case, please.

4          (Case called)

5          MS. MORTAZAVI:    Good afternoon, your Honor.  Sarah

6    Mortazavi for the government.

7          THE COURT:    Good afternoon, Ms. Mortazavi.

8          MR. OKSENHENDLER:    Good afternoon, your Honor.  Guy

9    Oksenhendler for Mr. Marino, who is present with us here.

10          THE COURT:    Good afternoon, Mr. Oksenhendler.  Good

11    afternoon, Mr. Marino.

12          I apologize to everyone for being late.  My link was

13    not working properly.  I'm also getting feedback.

14          MR. OKSENHENDLER:    Judge, I'll turn off my microphone.

15          THE COURT:    I was going to say, might be good if

16    everyone mute their lines unless they're speaking to me.

17          All right.  Before we get going with anyone else, let

18    me just note for the record we have a court reporter,

19    obviously.

20          Mr. Malinowski, can you hear us?

21          (Pause)

22          The court has received an application to seal the

23    proceeding, all filings related to it, and the public docket,

24    including any notifications of all matters relating to this

25    proceeding.

KB4CmarP

1          Does anyone wish to be heard on that application?

2          MR. OKSENHENDLER:    Yes, your Honor.  On behalf of

3     Mr. Marino, this is Guy Oksenhendler.

4          We would have no objection to that request and we're

5     actually throwing in that request.

6          THE COURT:    All right.  Thank you, counsel.

7          Ms. Mortazavi, I assume nothing further from the

8     government?

9          MS. MORTAZAVI:    Nothing beyond what's in the papers,

10    your Honor.

11         THE COURT:    All right.  The Court has carefully

12    reviewed the papers and does grant the application to seal.

13    So, going forward, this transcript, this hearing, all papers

14    submitted in connection with the proceeding are ordered under

15    seal and no filings will be made on the public docket

16    indicating the occurrence of this proceeding or any matters

17    related to it.  We'll find the order that you submitted and

18    Ms. Dempsey will get it to the parties via email.

19         All right.  Let me ask, Mr. Marino, are you able to

20    speak and understand English?

21         THE DEFENDANT:    Yes.

22         THE COURT:    You do not require the services of an

23    interpreter; correct?

24         THE DEFENDANT:    No.

25         THE COURT:    All right.  I am informed that defendant

1    has an application to withdraw his plea of not guilty, to waive

2    indictment, and to enter a plea of guilty to a one-count sealed

3    information that is labeled S4 in 20CR160.  That information

4    charges Mr. Marino with one count of drug adulteration and

5    misbranding, a conspiracy to adulterate and misbrand drugs in

6    violation of Title 18, United States Code, Section 371; is that

7    correct, Ms. Mortazavi?

8                MS. MORTAZAVI:    Yes, that's correct, your Honor.

9                THE COURT:    All right.  Mr. Oksenhendler?

10               MR. OKSENHENDLER:    Yes, your Honor.

11               THE COURT:    Okay.  Before we move on to the plea

12   proceeding, there are a couple of preliminaries that I need to

13   take care of.

14               First, I note that we're proceeding by videoconference

15   rather than live in the courtroom.  We're doing that in light

16   of the ongoing COVID-19 pandemic.  Pursuant to Section 15002 of

17   the CARES Act, the Court may proceed with a plea in a felony

18   case remotely if the Court finds for specific reasons that the

19   plea cannot be delayed without serious harm to the interest of

20   justice.  I have from the parties a letter, dated October 19th,

21   explaining the reasons that this plea hearing cannot and should

22   not be delayed.

23               Does anyone wish to be heard with respect to this

24   matter?

25               MS. MORTAZAVI:    From the government, nothing beyond

KB4CmarP

1      what's in our submission, your Honor.

2                      THE COURT:    Mr. Oksenhendler?

3                      MR. OKSENHENDLER:    I would agree, Judge.

4                      THE COURT:    All right.  The Court does find that

5      Mr. Marino's interest in resolving the charges against him,

6      avoiding the stress of having an open, pending criminal matter,

7      the government's interest in securing Mr. Marino's cooperation

8      for its continuing investigation related to this and other

9      similar cases merit the Court moving forward with this

10     proceeding today.

11                     I also note that there seems to be a bit of resurgence

12     in COVID-19 in New York City and the surrounding areas, which

13     potentially would make it dangerous for Mr. Marino and his

14     counsel and counsel for the government to travel to the

15     courthouse.

16                     I understand Mr. Marino lives in New Jersey; is that

17     correct?

18                     MR. OKSENHENDLER:    Yes.

19                     THE COURT:    So, for these reasons, I do find that the

20     application to proceed under Section 15002 of the CARES Act is

21     appropriate and that this proceeding cannot be delayed without

22     serious harm to the interest of justice.  In light of the

23     COVID-19 situation, it's unclear when we would be able to

24     otherwise gather in-person and conduct this proceeding.  So I

25     will sign an order granting the CARES Act request.

KB4CmarP

1          Again, that will be delivered to the parties by email

2     after this hearing and it will be kept under seal pending

3     further order from the Court.

4          Next, I've received a written waiver of Mr. Marino's

5     right to be present, live in front of me in a courthouse at

6     this criminal proceeding and a separate consent to proceed by

7     videoconference.

8          I want to confirm with the defendant and with you,

9     Mr. Oksenhendler, that Mr. Marino was advised of his right to

10    be physically present before me in a courtroom and he has

11    voluntarily given up that right.

12         As I say, I do have two signed documents, one is

13    labeled "Waiver of Right to be Present at Criminal Proceeding,"

14    and the second is captioned "Consent to Proceed by

15    Videoconference."

16         Mr. Oksenhendler, would you please outline on the

17    record the circumstances under which you provided these

18    documents to Mr. Marino, including whether you explained to him

19    his right to have a live hearing at the courthouse and how you

20    secured his signature on these documents.

21         MR. OKSENHENDLER:    Thank you, your Honor.  This is Guy

22    Oksenhendler for Mr. Marino.

23         Upon receiving those documents, I immediately called

24    my client, Mr. Marino, with regard to both the waiver form and

25    the consent form, and explained to him his very important right

KB4CmarP

1    that he has to appear personally with me in court in front of

2    you at the courthouse, but that under the circumstances, that

3    provision has been made by law which would allow us to appear

4    by video.  I explained to him the circumstances which I felt

5    would warrant him waiving his right to appear in court

6    personally and consenting to proceed by videoconference.

7              At that time on the telephone, I read to him,

8    verbatim, the forms that I was going to ask him to execute.

9    After taking the time to carefully explain to him his rights

10   and what waiving those rights would be, Mr. Marino — and I

11   don't wish to waive any attorney-client privilege — expressed

12   to me that he would agree to waive his right to appear and that

13   he would consent to proceed at this proceeding through a

14   videoconference.

15             Thereafter, I emailed him a copy of the forms that I,

16   verbatim, read to him.  Then, over the phone, I answered any

17   questions that he had, and I don't recall him having very many

18   questions about it, other than where he should sign.  He then

19   executed the documents and returned them to me.  After he

20   returned them to me, I executed the documents where I needed to

21   execute them.  I think on one of the documents, it required one

22   of my signatures, and on the second document, I think it

23   required perhaps two on the second page, if I'm not mistaken.

24   Then I forwarded those documents to a colleague of mine who had

25   sent them to me from the United States Attorney's Office,

KB4CmarP

1    knowing that he was then going to submit them to the Court with

2    our consent.

3                    THE COURT:    All right.  Thank you.

4                    Mr. Marino, have you heard what your attorney has

5    outlined to me about how you received these forms, about his

6    explanation to you about your right to appear live in the

7    courthouse?

8                    THE DEFENDANT:    Yes, he explained everything to me.

9                    THE COURT:    Is what he told me accurate?

10                    THE DEFENDANT:    Yes.

11                    THE COURT:    Do you have these two documents in front

12    of you?

13                    THE DEFENDANT:    No, I don't.

14                    THE COURT:    Did you, in fact, put your signature on a

15    Waiver of Right to be Present at Criminal Proceeding?

16                    THE DEFENDANT:    Yes.

17                    THE COURT:    Did you, in fact, put your signature on

18    Consent to Proceed by Videoconference?

19                    THE DEFENDANT:    Yes, I did.

20                    THE COURT:    All right.  The Court has these two

21    documents.

22                    Mr. Marino, you do, in fact, waive your right?  You

23    understand your rights to be before me live in a courtroom?

24                    THE DEFENDANT:    Yes, I do.

25                    THE COURT:    And you waive that right?

KB4CmarP

1      THE DEFENDANT:    Yes.

2      THE COURT:    And you consent to having us conduct this

3  hearing on videoconference?

4      THE DEFENDANT:    Yes, I do.

5      THE COURT:    All right.  Mr. Oksenhendler, the Waiver

6  of Right to be Present at Criminal Proceeding, I think we

7  originally had received only the front page of it without your

8  signature, and then you sent us another copy with both sides,

9  the back of which contains your signature.

10      MR. OKSENHENDLER:    If there is a way I can sometimes

11  make a mistake, that's exactly how I do it.

12      THE COURT:    The Consent to Proceed by Video is a

13  one-page document, which does have both signatures on the same

14  page.  Based on my conversation with counsel and with the

15  defendant, I do find the defendant has knowingly and

16  voluntarily waived his right to be present in a courtroom

17  before me, live, and has consented instead to proceed by

18  videoconference.

19      So the Court will execute each of these two forms,

20  return copies to each of you, Ms. Mortazavi and

21  Mr. Oksenhendler, so you have copies for your records.  They

22  will be made part of the case file, but will not be filed on

23  the open docket at this time.

24      Let me back up for just one moment.

25      With respect to the application that I mentioned that

KB4CmarP

1     I received from counsel outlining why you wish to proceed today

2     with this hearing and why it could not be further delayed, I

3     said on the record that the letter was dated October 19th.  I

4     have two copies of the letter — one is dated October 27 and

5     then we received another version of what seems to be, the best

6     I can tell, pretty much the same letter.  The numbering of the

7     case is changed in the second letter that I received.  It's

8     dated November 2nd, 2020.  I don't know where the October 19th

9     date came from, but that was inaccurate on my part.  So the

10    operative letter is a November 2 letter with a reference line,

11    United States v. Christopher Marino, S4 20 CR 160, and that's

12    the change, the October 27th version said S3.

13            MR. OKSENHENDLER:    Yes.  We were made aware of that.

14    So, after the Court made the U.S. Attorney aware, counsel made

15    me aware that he was going to submit an updated letter with the

16    corrected case number, and I believe that explains why you

17    received the second letter.

18            THE COURT:    Okay.  But my recitation, originally, was

19    the letter date was inaccurate.  We now have the proper record.

20    We have one more preliminary matter before we get to the

21    substance of why we're convened.

22            Recently, Congress has amended Rule 5 of the Federal

23    Rules of Criminal Procedure.  That requires that I remind the

24    government, both orally, the first time that we are convened

25    with counsel for both the government and the defendant present,

KB4CmarP

1    and that I also enter a written order reminding the government

2    of its disclosure obligations.  We will get a written order

3    entered on the docket, if I have not already.  I believe I have

4    already done that, in fact, in the main case filing --

5              MS. MORTAZAVI:    I believe you have, your Honor.

6              THE COURT:    -- in 20CR160, not in each individual, but

7    in the main case, the order is already entered.

8              However, to comply with Rule 5(f), Ms. Mortazavi, I

9    now remind you of your obligation under *Brady v. Maryland* to

10   disclose to the defense all information, whether admissible or

11   not, that is favorable to the defendant, material either to

12   guilt or to punishment, and that is known to the government.

13   The government must make a good-faith effort to disclose such

14   information to the defense as soon as reasonably possible after

15   its existence becomes known to the government.

16             As part of this obligation, the government must

17   disclose information that can be used to impeach the trial

18   testimony of a government witness within the meaning *Giglio v.*

19   *United States* and its progeny, and must do so sufficiently in

20   advance of trial in order for the defendant to make effective

21   use of it at trial.

22             I remind you that these obligations are continuing

23   ones and that they apply to information, whether the government

24   credits that information or not.

25             I further remind you that for these purposes, the

KB4CmarP

1  government includes any federal, state, and local prosecutors,

2  law enforcement officers, and other officials who have

3  participated in the investigation and prosecution of the

4  charged offenses, whether or not such officials are still part

5  of the team, and that you have an affirmative obligation to

6  seek from these sources all information subject to disclosure.

7            Finally, I caution the government that if it fails to

8  comply with its obligations in this regard, any number of

9  consequences may follow.  First, I may order production of the

10 information and specify the terms and conditions of such

11 production, I may grant a continuance, I may impose evidentiary

12 sanctions or sanctions on any responsible lawyer for the

13 government, I may dismiss charges before trial or vacate a

14 conviction after trial or a guilty plea, and I may enter any

15 other order that is just under the circumstances.

16            Ms. Mortazavi, do you understand these obligations?

17            MS. MORTAZAVI:    Yes, your Honor.  We understand them

18 and we will comply with them.

19            THE COURT:    With that, will you confirm that you have

20 fulfilled and will continue to fulfill your obligations?

21            MS. MORTAZAVI:    Yes, your Honor.

22            THE COURT:    Thank you.  So, with all of these

23 preliminaries out of the way, as I said, we are here because

24 I'm advised that Mr. Marino wishes to change his plea and to

25 enter a plea of guilty in this matter.

KB4CmarP

1          Is this plea pursuant to an agreement?

2          MR. OKSENHENDLER:    Yes.

3          THE COURT:    Mr. Oksenhendler?

4          MR. OKSENHENDLER:    Yes, your Honor.

5          THE COURT:    All right.  I have a letter dated

6    September 25 to Mr. Oksenhendler on the letterhead of the

7    United States Department of Justice, U.S. Attorney for the

8    Southern District of New York, signed by Andrew Adams on behalf

9    of the Office of Audrey Strauss, Acting United States Attorney.

10         Is this the agreement between the parties pursuant to

11   which Mr. Marino will enter a plea?

12         MR. OKSENHENDLER:    Yes, your Honor.

13         MS. MORTAZAVI:    Yes, your Honor.

14         THE COURT:    So this agreement will be entered in the

15   record as Government Exhibit 1.

16         Mr. Marino, do you have a copy of the September 25

17   letter agreement?

18         THE DEFENDANT:    No, I don't have it with me.

19         THE COURT:    But you have seen it, sir?

20         THE DEFENDANT:    Yes.

21         THE COURT:    Okay.  So, I'm also informed that

22   Mr. Marino has signed a waiver of his right to be prosecuted by

23   indictment; is that correct, Mr. Oksenhendler?

24         MR. OKSENHENDLER:    Yes, it is, your Honor.

25         THE COURT:    I have a document that appears to contain

KB4CmarP

1   Mr. Marino's signature.

2            Mr. Marino, do you recall signing such a document?

3            THE DEFENDANT:   Yes, I did.

4            THE COURT:   You did, in fact, sign such a document?

5            THE DEFENDANT:   Yes.

6            THE COURT:   Mr. Oksenhendler, this seems to also

7   contain your signature; is that correct?

8            MR. OKSENHENDLER:   Yes, your Honor.  Before I executed

9   the document, I reviewed it with my client, explained to him

10  his rights that he would be waiving.  He indicated to me that

11  he would be willing to make such a waiver of his rights.  I

12  believe that he made that waiver knowingly, intelligently, and

13  voluntarily.  After he executed the document and returned it to

14  me, I executed it and returned it to the Court.

15           THE COURT:   Thank you, Mr. Oksenhendler.  I will get

16  to the acceptance of this in a few moments after I have

17  Mr. Marino under oath and ask him some questions with respect

18  to competence.

19            Before we get there, just for the record, this

20  document is dated October 31st.  It says that the above-named

21  defendant — I'm going to skip some of this, what he's accused

22  of, it goes on to say — hereby waives, in open court,

23  prosecution by indictment and consents that the proceeding may

24  be by information instead of indictment.  I'm going to strike

25  the words "in open court," with the consent of counsel for both

KB4CmarP

1    sides, if that is acceptable.

2              Mr. Oksenhendler?

3              MR. OKSENHENDLER:    Yes, of course it is, your Honor.

4              THE COURT:    Ms. Mortazavi?

5              MS. MORTAZAVI:    Yes, your Honor.

6              THE COURT:    All right.  We are, as we've already

7    established, doing this by videoconference.

8              All right.  We'll return to this in a moment, but I

9    will mark this waiver of right to indictment as Court

10   Exhibit 1.  It will be part of the record in this matter.

11             Ms. Mortazavi, I assume that, given the application to

12   seal, there has been no notice given of today's proceeding to

13   any victims, but are they generally aware of this case?

14             MS. MORTAZAVI:    Yes, your Honor.  Victims have been

15   informed of the case generally and I will, of course, inform

16   any victims prior to sentencing.

17             THE COURT:    All right.  So, Mr. Marino, before I

18   accept your waiver of indictment, the document we were just

19   talking about, and your plea of guilty, there are a number of

20   questions that I need to ask you while you are under oath.  The

21   reason for those questions is for me to be certain that the

22   waiver of your right to indictment is valid and that your plea

23   is valid and knowingly given.  I may, at times, cover a point

24   more than once and I may cover matters that were also addressed

25   in some of these written documents and agreements that you had

KB4CmarP

1  seen and that you signed, but I'm doing that because what we're

2  doing today is very important, and it's important that you

3  understand what's happening today.

4          So, if, at any point, you do not understand something

5  that I ask you, please say so.  If you need to talk to

6  Mr. Oksenhendler, please let me know that and we'll take a

7  pause in the proceedings so that you may consult with your

8  lawyer.  All right?

9          THE DEFENDANT:    Okay.

10          THE COURT:    All right.  And Mr. Marino, if you don't

11  understand my question at any point, aside from not hearing it

12  properly, but if you don't understand it, please let me know

13  that, as well and I'll either rephrase the question or give you

14  an opportunity again to speak with your counsel.

15          Will you do that?

16          THE DEFENDANT:    Yes.

17          THE COURT:    All right.  Thank you.

18          Ms. Dempsey, would you please administer the oath to

19  Mr. Marino.

20          (Defendant sworn)

21          All right.  Thank you.

22          Mr. Marino, you understand that you now have solemnly

23  promised to tell the truth, and that if you answer any of my

24  questions falsely, your false or untrue answers may later be

25  used against you in another prosecution for perjury or for

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

KB4CmarP

1    making a false statement?

2              Do you understand that?

3              THE DEFENDANT:    Yes.

4              THE COURT:    Can you tell me, sir, how old are you?

5              THE DEFENDANT:    57.

6              THE COURT:    And how far did you go in school,

7    Mr. Marino?

8              THE DEFENDANT:    10th grade.

9              THE COURT:    We've already established you are able to

10   speak and understand English perfectly?

11             THE DEFENDANT:    Yes.

12             THE COURT:    Is English your first and native language?

13             THE DEFENDANT:    Yes, it is.

14             THE COURT:    Are you a United States citizen, sir?

15             THE DEFENDANT:    Yes, I am.

16             THE COURT:    Are you now or have you recently been

17   under the care of a medical doctor?

18             THE DEFENDANT:    Just high blood pressure.

19             THE COURT:    Right.  Are you now or have you recently

20   been under the care of a psychiatrist?

21             THE DEFENDANT:    No.

22             THE COURT:    Have you ever been treated or hospitalized

23   for any mental illness?

24             THE DEFENDANT:    No.

25             THE COURT:    Have you ever been treated or hospitalized

1    for any kind of addiction, including drug or alcohol addiction?

2                    THE DEFENDANT:    No.

3                    THE COURT:    In the past 24 hours, have you taken any

4    drugs, medicine, or pills?

5                    THE DEFENDANT:    No.

6                    THE COURT:    In the past 24 hours, have you had any

7    alcohol to drink?

8                    THE DEFENDANT:    No, I haven't.

9                    THE COURT:    Is your mind clear today?

10                    THE DEFENDANT:    Yes.

11                    THE COURT:    Are you feeling physically healthy and

12    well today?

13                    THE DEFENDANT:    Yes.

14                    THE COURT:    Do you understand, Mr. Marino, what we're

15    about to do or what you're about to do today?

16                    THE DEFENDANT:    Yes, I do.

17                    THE COURT:    Are you represented by counsel, sir?

18                    THE DEFENDANT:    Yes, I am.

19                    THE COURT:    Who is your counsel?

20                    THE DEFENDANT:    Guy Oksenhendler.

21                    THE COURT:    Are you satisfied with your counsel's

22    representation of you?

23                    THE DEFENDANT:    Very.

24                    THE COURT:    Does counsel have any doubt as to

25    defendant's competence to waive indictment and plead guilty at

KB4CmarP

1  this time?  Ms. Mortazavi.

2              MS. MORTAZAVI:    No, your Honor.

3              THE COURT:    Mr. Oksenhendler.

4              MR. OKSENHENDLER:    None whatsoever, Judge.

5              THE COURT:    Mr. Marino, as I said, your attorney

6  informs me you wish to waive indictment and enter a plea of

7  guilty to an information.  Do you, in fact, wish to waive

8  indictment and enter a plea of guilty at this time?

9              THE DEFENDANT:    Yes, I do.

10             THE COURT:    Have you fully discussed your case with

11 your lawyer, including the charges to which you intend to plead

12 guilty and any possible defense to that charge?

13             THE DEFENDANT:    Yes, we've discussed it all.

14             THE COURT:    Have you discussed the consequences of

15 entering a plea of guilty?

16             THE DEFENDANT:    Yes.

17             THE COURT:    And you are satisfied with the explanation

18 and the conversations you've had with your lawyer?

19             THE DEFENDANT:    Very satisfied.  Everything is good.

20             THE COURT:    No questions unanswered before we proceed?

21             THE DEFENDANT:    No.

22             THE COURT:    I do find, on the basis of Mr. Marino's

23 responses to my questions and my observation of his demeanor,

24 that he is fully competent to waive indictment and to enter an

25 informed plea to the charges in the information at this time.

KB4CmarP

1              Mr. Marino, before I accept any plea from you, I need

2      to ask you certain additional questions.  Those questions are

3      intended to satisfy me that you wish to plead guilty because

4      you are, in fact, guilty, and that you fully understand your

5      rights and the consequences of entering a plea of guilty.

6              So let me begin with describing to you certain rights

7      that you have under the Constitution and the laws of the United

8      States.  You will be giving up these rights if you enter a plea

9      of guilty.  Please listen carefully to me, and if you do not

10      understand something I'm saying, please stop me and either I or

11      your attorney will explain it to you more fully.

12              Will you do that, sir?

13              THE DEFENDANT:    Yes.

14              THE COURT:    Mr. Marino, under the Constitution and the

15      laws of the United States, you have the right to a speedy and a

16      public trial by a jury on the charges against you, which are

17      contained in the information.

18              Do you understand that?

19              THE DEFENDANT:    Yes.

20              THE COURT:    Do you understand that you have the right

21      to plead not guilty and to continue to plead not guilty?

22              THE DEFENDANT:    Yes, I do.

23              THE COURT:    If there were a trial, you would be

24      presumed innocent and the government would be required to prove

25      you guilty by competent evidence and beyond a reasonable doubt.

1      You would not have to prove at trial that you were innocent.

2                  Do you understand that?

3                  THE DEFENDANT:    Yes.

4                  THE COURT:    Do you understand that if there were a

5      trial, a jury made up of 12 people selected from this district,

6      which is the Southern District of New York, would have to agree

7      unanimously in order to find you guilty?

8                  Do you understand that?

9                  THE DEFENDANT:    Yes, I understand how that works.

10                 THE COURT:    Do you understand that if there were a

11     trial and at all stages leading up to any trial you would have

12     the right to be represented by an attorney, and if you could

13     not afford one, an attorney would be provided to you free of

14     cost both at trial and at every other stage of the proceeding?

15                 Do you understand that?

16                 THE DEFENDANT:    Yes, ma'am.

17                 THE COURT:    And do you understand that if there were a

18     trial, you would have the right to see and to hear all of the

19     witnesses against you and your attorney could cross examine

20     them, you would have the right to have your attorney object to

21     the government's evidence and to offer evidence on your behalf

22     if you so desired, you would have the right to have witnesses

23     required to come to court to testify in your defense, and you

24     would have the right to testify yourself, but you would not be

25     required to do so?

KB4CmarP

1                     Do you understand that, as well, sir?

2                 THE DEFENDANT:    Yes.

3                 THE COURT:    Do you understand that if there were a

4  trial and you decided not to testify, no adverse inference

5  could be drawn against you based on your decision not to

6  testify?  By that, I mean that the jury would be instructed

7  that it cannot assume that you didn't testify because you're

8  hiding something or because you are guilty.

9                     Do you understand that?

10               THE DEFENDANT:    Yes.

11               THE COURT:    Do you understand that if you were

12  convicted at trial, you would have the right to appeal the

13  jury's verdict?

14               THE DEFENDANT:    Yes.

15               THE COURT:    Do you understand each and every one of

16  these rights that I have outlined for you?

17               THE DEFENDANT:    Yes, I do.

18               THE COURT:    Do you have any questions about these

19  rights?

20               THE DEFENDANT:    No.

21               THE COURT:    Are you hesitating, sir?

22               THE DEFENDANT:    No.  No.  I just couldn't hear you

23  that good.

24               THE COURT:    So I asked you if you had any questions

25  about any of the rights that I outlined for you.

KB4CmarP

```
 1                THE DEFENDANT:    No, I understand all of my rights.
 2                THE COURT:    Do you understand by entering a plea of
 3   guilty today, you will be giving up each and every one of these
 4   rights, that you will be waiving your rights in these regards?
 5                THE DEFENDANT:    Yes, I do.
 6                THE COURT:    Do you understand that you will be waiving
 7   any possible claim that your constitutional rights may have
 8   been violated and that you will have no trial on the charge
 9   against you?
10                Do you understand that?
11                THE DEFENDANT:    Yes, I do.
12                THE COURT:    Do you understand that by entering a plea
13   of guilty, you will also have to give up your right not to
14   incriminate yourself because I'm going to ask you, in a few
15   minutes, questions about what you did in order to satisfy
16   myself that you are guilty as charged, and you will have to
17   admit and acknowledge your guilt?
18                Do you understand that?
19                THE DEFENDANT:    Yup.  Yes.
20                THE COURT:    Do you understand that you can change your
21   mind right now and refuse to enter a plea of guilty, you do not
22   have to enter this plea if you do not want to for any reason?
23                Do you understand that, Mr. Marino?
24                THE DEFENDANT:    Yes, I do.
25                THE COURT:    Do you still wish to plead guilty?
```

KB4CmarP

1           THE DEFENDANT:    Yes.

2           THE COURT:    All right.  So, the document that contains

3    the charge to which you have indicated you wish to plead guilty

4    is called an information.  It's been issued by the United

5    States Attorney for the Southern District of New York.  As we

6    discussed briefly a few minutes ago, you have a constitutional

7    right to be charged by an instrument known as an indictment

8    rather than an information.  An indictment is a charge that's

9    issued from a grand jury.

10           Do you understand that?

11           THE DEFENDANT:    Yes.  He explained all that to me.

12           THE COURT:    As we talked about a few minutes ago, I

13   have a waiver of indictment that we marked as Court Exhibit 1.

14   It appears to have been signed by you and your lawyer.

15           Did you, in fact, sign the waiver of indictment?

16           THE DEFENDANT:    Yes, I did.

17           THE COURT:    You did read it before you signed it?

18           THE DEFENDANT:    Yes, clearly here.

19           THE COURT:    Did you review it with your lawyer?

20           THE DEFENDANT:    We talked about it, yes.

21           THE COURT:    You had the opportunity to ask any

22   questions about it that you might have?

23           THE DEFENDANT:    No, I understand what I, you know --

24           THE COURT:    I don't want to know about your

25   conversations with your counsel, I just want to know, did you

KB4CmarP

1    have the opportunity to get everything fully explained to you?

2                    THE DEFENDANT:    Oh, yes, he explained everything to

3    me.

4                    THE COURT:    Okay.  Do you understand that if you do

5    not waive indictment, if the government wants to prosecute you

6    on the facts and on the charges in the information, it would

7    have to present its case to the grand jury and the grand jury

8    might or might not indict you on the charge?

9                    Do you understand that?

10                   THE DEFENDANT:    Yes.

11                   THE COURT:    Do you understand you have no obligation

12   to waive indictment?

13                   THE DEFENDANT:    No, I understand.

14                   THE COURT:    You understand that by signing the waiver

15   of indictment, you've given up your right to have this case

16   presented to a grand jury?

17                   THE DEFENDANT:    Yes.

18                   THE COURT:    Do you understand what a grand jury is,

19   sir?

20                   THE DEFENDANT:    Yeah, that's -- yeah, he explained to

21   me what it is.

22                   THE COURT:    All right.  You understand that a grand

23   jury consists of 23 people, at least 16 of whom must be present

24   in order to conduct business, and that you cannot be charged

25   unless at least 12 of those people vote for an indictment?

1          Do you understand that?

2          THE DEFENDANT:   Yes.

3          THE COURT:    Did anyone make any threats or promises to

4    you to get you to waive indictment?

5          THE DEFENDANT:   No.

6          THE COURT:    Have you seen a copy of the information

7    that contains the charge against you?

8          THE DEFENDANT:   Yes.

9          THE COURT:   Have you read it?

10         THE DEFENDANT:   Yes.

11         THE COURT:    Have you discussed it with your lawyer?

12         THE DEFENDANT:   Yes.

13         THE COURT:    Do you understand the charge against you

14    that's contained in the information?

15         THE DEFENDANT:   Yes.

16         THE COURT:    Mr. Marino, I can read this information

17    out loud now if you would like me to do so or you can waive my

18    reading this into the record.

19          Would you like me to read the information to you or do

20    you waive public reading?

21         THE DEFENDANT:    No, I'm good with -- I've already gone

22    over it.  So, yeah, you don't have to read all of it.

23         THE COURT:    So you waive public reading?

24         THE DEFENDANT:   Yes, I do.

25         MR. OKSENHENDLER:    Your Honor, this is Guy

KB4CmarP

1    Oksenhendler.  After discussing that matter privately with my

2    client, we would waive his public reading.

3                THE COURT:    Thank you, Mr. Oksenhendler and

4    Mr. Marino.

5                Based on the responses to the questions that I have

6    posed to Mr. Marino and, again, my observation of his demeanor,

7    I do find that the waiver of indictment is knowing and is

8    voluntarily given.  I will therefore accept it and it will be

9    so ordered and become part of the record in this case.

10               Mr. Marino, do you understand that Count One of the

11   information charges you with participating in the conspiracy to

12   adulterate or misbrand drugs in violation of Title 18, United

13   States Code, Section 371?

14               THE DEFENDANT:    Yes, I do.

15               THE COURT:    Ms. Mortazavi, would you please outline

16   for the record the elements of the charge contained in the

17   information.

18               MS. MORTAZAVI:    Certainly, your Honor.  On the one

19   count in the information charging, as the Court described, the

20   violation of Title 18, United States Code, Section 371, the

21   government would have to prove the following elements beyond a

22   reasonable doubt:

23               First, that there was an unlawful agreement to commit

24   an offense;

25               Second, that the defendant knowingly became a member

KB4CmarP

1    of the conspiracy; and

2                Third, that some member of the conspiracy took some

3    overt act in furtherance of the conspiracy.

4                Here, the object of the conspiracy charged was to

5    adulterate and misbrand drugs with the intent to defraud or

6    mislead in violation of Title 21, United States Code, Section

7    331(b) and 333(a)(2).

8                The elements of that offense are as follows:

9                First, that there was a drug in interstate commerce;

10               Second, that the defendant took some act that resulted

11   in the misbranding or adulteration of that drug;

12               Third, that the defendant had the intent to defraud or

13   mislead.

14               The government would also have to prove by a

15   preponderance of the evidence that venue was proper in the

16   Southern District of New York.

17               THE COURT:    All right.  Mr. Marino, do you understand

18   that the government would have to prove each and every part or

19   each and every element of this charge, as Ms. Mortazavi has

20   just outlined on the record, beyond a reasonable doubt at trial

21   if you did not plead guilty?

22               THE DEFENDANT:    Yes, I do.

23               THE COURT:    And do you understand, sir, that the

24   maximum possible penalty for the crime to which you are

25   entering or you intend to enter a plea of guilty as charged in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

KB4CmarP

1    Count One is five years of imprisonment?

2                    THE DEFENDANT:    Yes, I do.

3                    THE COURT:    Do you understand that, in addition to the

4    loss of your liberty, there are also financial consequences to

5    pleading guilty, including a maximum fine of the greatest of

6    $250,000, twice the gross pecuniary gain that you derived from

7    the offense, or twice the gross pecuniary loss to a person

8    other than yourself as a result of the offense?

9                    THE DEFENDANT:    I understand.

10                    THE COURT:    And do you understand that, in addition,

11    the offense carries a maximum term of three years of supervised

12    release after any term of imprisonment?

13                    THE DEFENDANT:    Yes.

14                    THE COURT:    And do you understand that there is also a

15    mandatory $100 special assessment?

16                    THE DEFENDANT:    Yes.

17                    THE COURT:    With respect to the charge in the

18    information, Mr. Marino, do you understand the matters the

19    government would have to prove if you did not plead guilty?

20                    THE DEFENDANT:    Yes, I do.

21                    THE COURT:    I want to now give you some information

22    just to be sure you understand the supervised release aspect of

23    the potential penalty for the charge to which you intend to

24    plead guilty.

25                    Supervised release means that you would be subject to

KB4CmarP

1     monitoring when you were released from prison, terms and

2     conditions will be imposed on you, and if you violate any of

3     the set terms and conditions, you can be reimprisoned without a

4     jury trial.  If you are on supervised release and do not comply

5     with any of the set terms and conditions, you could be returned

6     to prison for the remainder of the term of supervised release.

7     You will be given no credit for the time you served in prison

8     as a result of your sentence and no credit for any time spent

9     on post-release supervision.

10                Do you understand that?

11                THE DEFENDANT:    Yes, I do.

12                THE COURT:    Do you further understand that if I accept

13     your guilty plea and adjudge you guilty, that adjudication may

14     deprive you of valuable civil rights, such as the right to

15     vote, the right to hold public office, the right to serve on a

16     jury, and the right to possess any kind of firearm if you

17     currently have or could otherwise obtain such rights?

18                Do you understand that?

19                THE DEFENDANT:    Yes.

20                THE COURT:    Do you understand, as well, that if you

21     are not a United States citizen, I understand you told me you

22     are, but if it turned out you are not and I accept your guilty

23     plea and adjudge you guilty, do you understand that you could

24     be removed from the United States, denied citizenship or denied

25     admission to the United States in the future?

KB4CmarP

1          THE DEFENDANT:    Yes.

2          THE COURT:    Did you discuss your immigration situation

3    with your attorney?

4          THE DEFENDANT:    Yeah.  I mean, he knows I'm a citizen.

5          THE COURT:    But you did discuss with him that pleading

6    guilty can have impact --

7          THE DEFENDANT:    Oh, yeah.  Yeah, he told me all of

8    that.

9          THE COURT:    Do you understand that there are

10   sentencing guidelines that the Court must consider in

11   determining what sentence to impose?

12         THE DEFENDANT:    Yes.

13         THE COURT:    Has your attorney discussed the sentencing

14   guidelines with you?

15         THE DEFENDANT:    He told me what the possibilities

16   were, yes.

17         THE COURT:    And he discussed with you this framework

18   that there are certain guidelines that I have to consult and

19   refer --

20         THE DEFENDANT:    Oh, yes.  Yes.

21         THE COURT:    Do you also understand that, in

22   determining your sentence, I'm obligated to calculate the

23   applicable sentencing guideline range and then to consider that

24   range, any possible departures under the sentencing guidelines,

25   meaning up or down from that range, and other sentencing

KB4CmarP

1  factors that are set forth in the statute, 18 U.S.C. Section

2  3553(a).

3         Did your lawyer explain all of that to you?

4         THE DEFENDANT:    He told me everything, yeah, that can

5  possibly happen.

6         THE COURT:    Among the factors that I have to consider

7  under Section 3553(a), for your information, are the following:

8  The nature and circumstances of the offense to which you are

9  pleading guilty, your personal history and characteristics, the

10  need for any sentence I impose to reflect the seriousness of

11  the offense, to promote respect for law, and to provide a just

12  punishment for the offense, to afford adequate deterrence to

13  criminal conduct, to protect the public from further crimes by

14  you, to provide you with any needed educational or vocational

15  training, medical care or other treatment in the most efficient

16  and effective manner.

17         As I said I have to consider the sentencing guidelines

18  and the applicable range in this case, as well as the policy

19  statements underlying the adoption of those guidelines, I need

20  to be mindful not to allow unwanted disparities in sentences

21  among similarly-situated defendants, and I need to take into

22  account the need to provide restitution to any victims of the

23  offense that you were charged with.

24         Do you understand that I will take all of those

25  factors into account to fashion a sentence based on your plea

KB4CmarP

1    of guilty?

2                THE DEFENDANT:   Yes, I do.

3                THE COURT:   Do you understand that if your attorney or

4    anyone else has attempted to estimate or predict for you what

5    your sentence will be, their estimate or their prediction could

6    be wrong?

7                THE DEFENDANT:   Yes.

8                THE COURT:   Do you understand that even if your

9    sentence is different from what your attorney or anyone else

10    told you it might be or if it's different from what you expect,

11    if I accept your plea, you will still be bound by your guilty

12    plea and you will not be allowed at that point to withdraw your

13    plea of guilty?

14                Do you understand that?

15                THE DEFENDANT:   Yes, I do.

16                THE COURT:   Do you understand that if you are

17    disappointed or you're surprised by the sentence I impose, you

18    will still be bound to your guilty plea and you will not be

19    allowed to withdraw it at the time of sentencing?

20                THE DEFENDANT:   Yes.

21                THE COURT:   Do you understand that the sentence to be

22    imposed will be determined solely by the Court?

23                THE DEFENDANT:   Yes.

24                THE COURT:   And do you understand that I can only

25    determine the appropriate sentence to impose after the

KB4CmarP

1    probation department prepares what we call a presentence

2    report?

3                   THE DEFENDANT:    Yes.

4                   THE COURT:    Do you understand that the Court has

5    discretion — while taking into account the specific provisions

6    and policy statements in the sentencing guidelines and the

7    sentencing considerations in statute Section 3553(a) that I

8    outlined for you a few minutes ago — in this case to sentence

9    you to any number of years of imprisonment between zero and the

10   statutory maximum of 5 years?

11                  Do you understand that?

12                  THE DEFENDANT:    Yes.

13                  THE COURT:    Are you now serving any state or federal

14   sentence, or are you being prosecuted for any crime other than

15   the one to which you have told me you intend to plead guilty?

16                  THE DEFENDANT:    No.

17                  THE COURT:    Do you understand that the plea agreement

18   provides that you will make restitution in an amount to be

19   determined by the Court?

20                  THE DEFENDANT:    Yes.

21                  THE COURT:    Do you understand that the information

22   also includes a forfeiture allegation in which the government

23   alleges that you are required to forfeit to the government, to

24   the United States of America, a sum of money representing the

25   value of property you obtained as a result of the offense to

1    which you wish to plead guilty?

2                    THE DEFENDANT:    Yes.

3                    THE COURT:    And do you understand that any forfeiture

4    will not be treated as satisfaction of any fine or restitution,

5    or cost of imprisonment, or any other penalty that the Court

6    might impose?

7                    THE DEFENDANT:    I understand.

8                    THE COURT:    Mr. Marino, I have been given a copy, as I

9    said earlier, of a September 25th letter, which we have marked

10   as Government Exhibit 1.  Can you confirm for me, sir, that

11   this is your signature on the last page of this document next

12   to the date, October 25th, 2020?

13                   THE DEFENDANT:    Yes.

14                   THE COURT:    Did you sign a plea agreement on or about

15   that date?

16                   THE DEFENDANT:    Yes.

17                   THE COURT:    And did you read the agreement before you

18   signed it?

19                   THE DEFENDANT:    We went over it, yes.

20                   THE COURT:    But did you read it, sir?

21                   THE DEFENDANT:    Oh, yeah, I read it.

22                   THE COURT:    Then the next question, did you discuss it

23   with your lawyer before you signed it?

24                   THE DEFENDANT:    Yes.

25                   THE COURT:    And you had a full opportunity to ask him

KB4CmarP

1    any questions?

2                    THE DEFENDANT:    Yes.

3                    THE COURT:    And did you fully understand this

4    agreement before you signed it?

5                    THE DEFENDANT:    Yes, I did.

6                    THE COURT:    Does it accurately reflect your complete

7    and total understanding of the entire agreement between the

8    government, you, and your attorney?

9                    THE DEFENDANT:    Yes.

10                    THE COURT:    Is everything you understand about your

11   plea, your obligation to cooperate, and your sentence covered

12   in the agreement?

13                    THE DEFENDANT:    Everything is good, yeah.

14                    THE COURT:    Has anything that you understand been left

15   out of this written letter agreement?

16                    THE DEFENDANT:    No, it's all there.

17                    THE COURT:    Has anyone made any promises to you, other

18   than what's set forth in the agreement, or has anyone

19   threatened you or forced you to plead guilty or to enter into

20   the cooperation agreement?

21                    THE DEFENDANT:    No.

22                    THE COURT:    Do you understand that even if the

23   government does not oppose or take a position on what your

24   attorney will ask me to impose as a sentence, that I am

25   obligated to impose whatever sentence I believe is appropriate

KB4CmarP

1    under the circumstances and the applicable law, and you will

2    not have an opportunity or a right to withdraw your plea after

3    today?

4                    THE DEFENDANT:    Yes, I understand that.

5                    THE COURT:    Do you understand that the agreement, the

6    September 25, 2020 plea agreement, marked as Government

7    Exhibit 1, provides that you must cooperate fully with the

8    office of the United States Attorney, the Federal Bureau of

9    Investigation, and any other law enforcement agency designated

10   by the United States Attorney?

11                   THE DEFENDANT:    Yes, I understand.

12                   THE COURT:    Do you understand that the agreement

13   specifies that if you do cooperate fully with the

14   understandings set forth in the agreement and you cooperate

15   with the government, the United States Attorney for the

16   Southern District of New York will not prosecute you for any

17   actions related to your participation in conspiracies to

18   misbrand and adulterate performance enhancing drugs for use on

19   race horses?

20                   THE DEFENDANT:    Yes.

21                   THE COURT:    And do you understand that these actions

22   are nonetheless relevant conduct that the Court may consider in

23   determining an appropriate sentence?

24                   THE DEFENDANT:    I understand.

25                   THE COURT:    Do you understand that the United States

KB4CmarP

1    Attorney cannot and does not agree not to prosecute you for any

2    criminal tax violations you may have committed before today?

3                    THE DEFENDANT:    Yes.

4                    THE COURT:    And do you also understand that the

5    agreement doesn't bind any federal, state, or local prosecuting

6    authority, other than the United States Attorney of the

7    Southern District of New York?

8                    THE DEFENDANT:    Yes.

9                    THE COURT:    Do you understand that if the agreement

10   provides that if the United States Attorney determines that you

11   have provided substantial assistance in an investigation or a

12   prosecution and if you fully complied with the understanding

13   set forth in the agreement, the United States Attorney will

14   file a motion pursuant to Section 5K1.1 of the sentencing

15   guidelines in which it asks the Court to sentence you in light

16   of the factors set forth in Section 5K1.1A, Sections 1 through

17   5, which deal with your cooperation?

18                    THE DEFENDANT:    I understand.

19                    THE COURT:    And do you understand that the factors

20   that I may consider under Section 5K1.1 include the

21   significance and usefulness of your assistance, taking into

22   account the government's evaluation of the assistance that you

23   actually render, the truthfulness, completeness, and

24   reliability of any information or testimony you provide, the

25   nature and extent of your assistance, any injuries suffered or

KB4CmarP

1    danger or risk of injury to you or your family as a result of

2    your assistance, and the timeliness of your assistance?

3              Do you understand that those are all relevant factors

4    that I will take into account?

5              THE DEFENDANT:    Yes.

6              THE COURT:    Do you understand that even if the United

7    States Attorney files such a motion, the sentence to be imposed

8    remains solely within the discretion of the Court?

9              THE DEFENDANT:    Yes.

10             THE COURT:    And do you understand that you will not be

11   entitled to withdraw your plea if the Court denies the

12   government's motion under Section 5K1.1?

13             THE DEFENDANT:    Yes.

14             THE COURT:    And do you also understand that if the

15   United States Attorney determines that you have not provided

16   substantial assistance in an investigation or prosecution, or

17   that you violated any provision of the agreement, the

18   government is not obligated to file a motion under Section

19   5K1.1 of the sentencing guidelines?

20             Do you understand that?

21             THE DEFENDANT:    Yes.

22             THE COURT:    And do you understand that you will not be

23   entitled at that point to withdraw your plea of guilty, even if

24   the government decides not to file a 5K1.1 motion?

25             THE DEFENDANT:    Yes.

KB4CmarP

1          THE COURT:    Do you understand that the agreement you

2      signed provides that if you commit further crimes, or if it's

3      determined that you gave false, incomplete, or misleading

4      testimony or information, or you have otherwise violated any

5      provision of the agreement, you will be subject to prosecution

6      for any federal violations the United States Attorney has

7      knowledge of, including perjury and obstruction of justice?

8          THE DEFENDANT:    Yes.

9          THE COURT:    Do you understand that the agreement

10     provides that if you commit any further crimes, or if it's

11     determined that you gave false, incomplete, or misleading

12     testimony or information, or have otherwise violated any

13     provision of the cooperation agreement, all statements made by

14     you to the United States Attorney or any other designated law

15     enforcement agent, and any testimony you gave before a grand

16     jury or any other tribunal will be admissible in evidence in

17     any criminal proceeding against you?

18         THE DEFENDANT:    Yes.

19         THE COURT:    Do you understand that the agreement also

20     provides that you may not assert a claim that such statements

21     should be suppressed and that you have waived your right to

22     claim that any such statement should be suppressed?

23         THE DEFENDANT:    Yes.

24         THE COURT:    Mr. Marino, do you still wish to plead

25     guilty pursuant to the plea agreement to the sole count in the

KB4CmarP

1    information against you?

2                THE DEFENDANT:    Yes, I do.

3                THE COURT:    All right.  The Court finds that

4    Mr. Marino fully understands the terms of the plea agreement

5    which he has entered into, and has done so knowingly and

6    freely, and the Court will accept the plea agreement.

7                Mr. Oksenhendler, is there any valid reason that you

8    know of why your client would prevail at trial or do you know

9    of any reason why he should not be permitted to plead guilty?

10                MR. OKSENHENDLER:    No, your Honor.

11                THE COURT:    Mr. Marino, would you please tell me, in

12    your own words, what you did that makes you guilty of the crime

13    to which you're entering a plea of guilty.

14                THE DEFENDANT:    Yes.  From 2016 until March of 2020, I

15    agreed with other people to adulterate and misbrand, in the

16    Southern District of New York and elsewhere, misbranded and

17    adultered drugs, specifically clenbuterol that were sent

18    interstate commerce to disguise their true identity and

19    administered them to race horses to enhance their performances

20    during those races at tracks located in the Southern District

21    of New York.

22                THE COURT:    What did you do to misbrand or adulterate

23    the drugs?

24                THE DEFENDANT:    Just didn't, you know, didn't tell

25    people what we were doing, you know, and that kind of stuff.

KB4CmarP

1          THE COURT:    You didn't tell people that this was, in

2    fact, clenbuterol?

3          THE DEFENDANT:    No.

4          THE COURT:    What did people think it was?  Well, you

5    can't answer that question, really, but what did you represent

6    that it was?

7          THE DEFENDANT:    That it was just an oral medication

8    that we gave them.

9          THE COURT:    And you actually administered the

10   medication?

11         THE DEFENDANT:    Yes.

12         THE COURT:    And why did you do that?

13         THE DEFENDANT:    To help the horse breathing, the

14   bronchial dilator.

15         THE COURT:    When you did these acts, did you know that

16   what you were doing was wrong?

17         THE DEFENDANT:    Yes, I did.

18         THE COURT:    Did you know that it was illegal?

19         THE DEFENDANT:    To a certain extent, yes.

20         THE COURT:    And did you do it for the purpose of

21   defrauding or misleading others?

22         THE DEFENDANT:    To win, yeah, I guess -- yes, I would

23   have to say yes.

24         THE COURT:    Well, did you label it as clenbuterol?

25         THE DEFENDANT:    It was unlabeled.  The label was taken

KB4CmarP

1    off.

2    THE COURT:    And did you take the label off for the

3    purpose of misleading people of what it was?

4    THE DEFENDANT:    Yes.

5    THE COURT:    All right.  Ms. Mortazavi, is there

6    anything else or are there any further questions that you think

7    need to be addressed in the defendant's allocution?

8    MS. MORTAZAVI:    No further questions, your Honor.  But

9    I would like to proffer some facts that Mr. Marino may not be

10    aware of.  Specifically, clenbuterol is manufactured in

11    Missouri and I believe Mr. Marino can confirm that he primarily

12    worked in New Jersey, so the drug did pass in interstate

13    commerce.

14    THE COURT:    Is that accurate, Mr. Marino?

15    THE DEFENDANT:    Yes, it is.

16    THE COURT:    So you somehow received it in New Jersey?

17    THE DEFENDANT:    Yeah, from the person I was working

18    with, yes.

19    THE COURT:    And then it was administered to horses you

20    said who were racing in the Southern District of New York?

21    THE DEFENDANT:    Yes.

22    THE COURT:    So it somehow got from New Jersey to New

23    York?

24    THE DEFENDANT:    It was shipped, yeah.  I'm not exactly

25    sure how, but I administered, on February 1st of 2019, to Rock

KB4CmarP

1    Icon and he raced on February 5th, 2019.

2            THE COURT:    And that's a horse of Mr. Surick's?

3            THE DEFENDANT:    Yes, it is.

4            THE COURT:    Anything else, Ms. Mortazavi?

5            MS. MORTAZAVI:    Nothing further.  Thank you.

6            THE COURT:    Would you please summarize, Ms. Mortazavi,

7    the government's evidence against Mr. Marino.

8            MS. MORTAZAVI:    Certainly, your Honor.  If the case

9    were to proceed to trial, the government would produce various

10   pieces of evidence, including wiretap recordings of phonecalls

11   between Mr. Marino and Mr. Surick; electronically stored data

12   from devices that include text messages between Mr. Marino and

13   Mr. Surick; pictures of Mr. Marino preparing syringes, among

14   other photos; we would include testimony of lay and law

15   enforcement witnesses; call detail records; historical cell

16   site location information showing the location of Mr. Marino

17   and various coconspirators; we would introduce evidence of race

18   entries of horses that Mr. Surick and Mr. Marino worked on

19   together on Mr. Surick's farm; and physical evidence of seized

20   medication from various premises searches that we executed on

21   the date that Mr. Marino was arrested.

22           THE COURT:    All right.  Mr. Oksenhendler, do you have

23   any questions that you would like me to put to Mr. Marino?

24           MR. OKSENHENDLER:    No, your Honor.

25           THE COURT:    Do you have any questions about the

KB4CmarP

1    government's evidence?

2                MR. OKSENHENDLER:    I do not.  I've had a full

3    opportunity to review all of the discovery that's been provided

4    by the government to date, which is voluminous.  I have

5    reviewed it and I believe Ms. Mortazavi's statement is

6    consistent with my review of the government materials.  I

7    believe the government should be praised for the promptness and

8    thoroughness in which they have provided discovery to date.

9    They got discovery to us early on and that certainly aided me

10   in advising my client and reviewing the evidence in the case.

11               THE COURT:    And you have reviewed that evidence with

12   your client?

13               MR. OKSENHENDLER:    Yes, I have, your Honor.  To the

14   extent it was appropriate, yes, I have.

15               THE COURT:    All right.  Mr. Marino, do you have any

16   questions?

17               THE DEFENDANT:    No, I don't.

18               THE COURT:    Sir, how do you plead now to the charge in

19   Count One of the information, your participation in a

20   conspiracy to misbrand or adulterate drugs, do you plead guilty

21   or not guilty?

22               THE DEFENDANT:    Guilty.

23               THE COURT:    And are you pleading guilty, sir, because

24   you are, in fact, guilty?

25               THE DEFENDANT:    Yes, I am.

1          THE COURT:    Are you pleading guilty voluntarily?

2          THE DEFENDANT:    Yes.

3          THE COURT:    Are you pleading guilty of your own free

4   will?

5          THE DEFENDANT:    Yes.

6          THE COURT:    Do you understand that if I accept your

7   plea of guilty and adjudge you guilty, you will be bound by the

8   terms of the plea agreement we've just been discussing,

9   including what I summarized on the record and any other terms

10   in that agreement that I may not have summarized?

11          Do you understand that?

12          THE DEFENDANT:    Yes, I do.

13          THE COURT:    All right.  Mr. Oksenhendler, are there

14   any other questions you believe that I should ask Mr. Marino in

15   connection with this plea?

16          MR. OKSENHENDLER:    No, your Honor.

17          THE COURT:    Ms. Mortazavi?

18          MS. MORTAZAVI:    No, your Honor.

19          THE COURT:    Mr. Marino, you have acknowledged that you

20   are guilty as charged in the information.  I find that you know

21   and understand your rights and that you are waiving them

22   voluntarily because your plea is entered knowingly and

23   voluntarily, and it is supported by an independent basis in

24   fact containing each of the essential elements of the offense

25   charged.

1              I accept your plea of guilty and adjudge you guilty of

2      the offense charged in Count One of the information to which

3      you have pleaded guilty.

4              THE DEFENDANT:    Thank you, Judge.

5              THE COURT:    Is the government requesting that the

6      Court hold sentencing in abeyance pending the defendant's

7      cooperation?

8              MS. MORTAZAVI:    Yes, your Honor.  And we would ask the

9      Court set a deadline six months from today for the government

10     to submit a letter with a status update.

11             THE COURT:    All right.  Is that acceptable to you,

12     Mr. Oksenhendler?

13             MR. OKSENHENDLER:    Yes, your Honor.  We would also ask

14     that a presentence investigation report also be held in

15     abeyance at this time.

16             THE COURT:    Yes.  Ms. Mortazavi, I assume that's

17     acceptable?

18             MS. MORTAZAVI:    Yes, your Honor.

19             THE COURT:    Yes.  After I receive the status report

20     from Ms. Mortazavi, then we will determine where we're at and

21     where we go from there in terms of timing.  Ms. Mortazavi,

22     we'll enter an order setting a deadline six months from today.

23     The first written submission regarding status will be due six

24     months from today.  If we go beyond that, I will want reports

25     every three months thereafter.

1          MS. MORTAZAVI:    Certainly, your Honor.

2          THE COURT:    Until such time as you tell the Court,

3     with Mr. Oksenhendler's consent, that you are ready to proceed

4     with preparation of a presentence report, then we will set

5     deadlines for that.

6          MS. MORTAZAVI:    Very good.  Thank you.

7          THE COURT:    Mr. Oksenhendler, is that acceptable?

8          MR. OKSENHENDLER:    It sure is, Judge.

9          THE COURT:    At that point, once you tell me and we set

10    the schedule for meeting with probation for the preparation of

11    a presentence report, we'll then talk about setting the date

12    for sentencing at that point in time.  All right?

13         MR. OKSENHENDLER:    Very well.

14         THE COURT:    All right.  Are there any applications

15    with respect to bail, Ms. Mortazavi?

16         MS. MORTAZAVI:    Not at this time, your Honor.

17         THE COURT:    All right.  Does anybody have anything

18    further that they would like the Court to address with them

19    today?

20         MS. MORTAZAVI:    Not from the government.

21         MR. OKSENHENDLER:    Not from the defense either, your

22    Honor.

23         THE COURT:    All right.  Then we are adjourned.  I will

24    just note for the record that this proceeding, as I said, all

25    filings in connection with it and the transcript of today's

KB4CmarP

1    proceeding will remain under seal pending further order of the

2    Court.

3                    The final thing I would just like to do is to thank

4    Mr. Malinowski for being with us for today's proceeding in

5    order that we have an accurate record — that's our court

6    reporter.

7                    MR. OKSENHENDLER:    I would just request that the

8    parties be allowed to get a copy of the transcript, despite

9    sealing.

10                    THE COURT:    Yes, of course the parties can get a copy

11    of it, but nothing will be filed on the docket.  Obviously the

12    transcript cannot be shared with anyone or disseminated to

13    anybody.  That goes for you, as well, Mr. Marino.  If your

14    lawyer shares the transcript with you, you may not disclose it

15    to anybody else or share it with anybody else or tell anybody

16    about today's proceedings.

17                    MR. OKSENHENDLER:    It would just be for the purposes

18    of me having it for my file.

19                    THE COURT:    Email transmission to counsel is fine.

20    Thank you, everyone.  We are adjourned then.  Please, everyone,

21    stay safe and healthy.

22                                            * * *

23

24

25